## SKELLY OIL CO. ET AL. *v.* PHILLIPS PETROLEUM CO.

No. 221.   Argued December 9, 1949.—Decided June 5, 1950.

*Charles L. Black* argued the cause for petitioners. With him on the brief were *W. P. Z. German, Alvin F. Molony, Hawley C. Kerr, Donald Campbell, Ray S. Fellows, Dan Moody, Walace Hawkins, Earl A. Brown* and *Raymond M. Myers.*

*Harry D. Turner* argued the cause for respondent. With him on the brief were *Don Emery, Rayburn L. Foster, George L. Sneed, S. E. Floren, Jr.* and *Eugene O. Monnett.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In 1945, Michigan-Wisconsin Pipe Line Company sought from the Federal Power Commission a certificate of public convenience and necessity, required by § 7 (c) of the Natural Gas Act, 52 Stat. 825, as amended, 15 U. S. C. § 717f (c), for the construction and operation of a pipe line to carry natural gas from Texas to Michigan and Wisconsin. A prerequisite for such a certificate is adequate reserves of gas. To obtain these reserves Michigan-Wisconsin entered into an agreement with Phillips Petroleum Company on December 11, 1945, whereby the latter undertook to make available gas from the Hugoton Gas Field, sprawling over Kansas, Oklahoma and Texas, which it produced or purchased from others. Phillips had contracted with petitioners, Skelly Oil Company, Stanolind Oil and Gas Company, and Magnolia Petroleum Company, to purchase gas produced by them in the Hugoton Field for resale to Michigan-Wisconsin. Each contract provided that "in the event Michigan-Wisconsin Pipe Line Company shall fail to secure from the Federal Power Commission on or before [October 1, 1946] a certificate of public convenience and necessity for the construction and operation of its pipe line, Seller [a petitioner] shall have the right to terminate this contract by written notice to Buyer [Phillips] delivered to Buyer at any time after December 1, 1946, but before the issuance of such certificate." The legal significance of this provision is at the core of this litigation.

The Federal Power Commission, in response to the application of Michigan-Wisconsin, on November 30, 1946, ordered that "A certificate of public convenience and necessity be and it is hereby issued to applicant [Michigan-Wisconsin], upon the terms and conditions of this order," listing among the conditions that there be no transporta-

tion or sale of natural gas by means of the sanctioned facilities until all necessary authorizations were obtained from the State of Wisconsin and the communities proposed to be served, that Michigan-Wisconsin should have the approval of the Securities and Exchange Commission for its plan of financing, that the applicant should file for the approval of the Commission a schedule of reasonable rates, and that the sanctioned facilities should not be used for the transportation of gas to Detroit and Ann Arbor except with due regard for the rights and duties of Panhandle Eastern Pipe Line Company, which had intervened before the Federal Power Commission, in its established service for resale in these areas, such rights and duties to be set forth in a supplemental order. It was also provided that Michigan-Wisconsin should have fifteen days from the issue of the supplemental order to notify the Commission whether the certificate "as herein issued is acceptable to it." Finally, the Commission's order provided that for purposes of computing the time within which applications for rehearing could be filed, "the date of issuance of this order shall be deemed to be the date of issuance of the opinions, or of the supplemental order referred to herein, whichever may be the later." 5 F. P. C. 953, 954, 956.

News of the Commission's action was released on November 30, 1946, but the actual content of the order was not made public until December 2, 1946. Petitioners severally, on December 2, 1946, gave notice to Phillips of termination of their contracts on the ground that Michigan-Wisconsin had not received a certificate of public convenience and necessity. Thereupon Michigan-Wisconsin and Phillips brought suit against petitioners in the District Court for the Northern District of Oklahoma. Alleging that a certificate of public convenience and necessity, "within the meaning of said Natural Gas Act and said contracts" had been issued prior to petitioners' at-

tempt at termination of the contracts, they invoked the Federal Declaratory Judgment Act for a declaration that the contracts were still "in effect and binding upon the parties thereto." Motions by petitioners to have Michigan-Wisconsin dropped as a party plaintiff were sustained, but motions to dismiss the complaint for want of jurisdiction were denied. The case then went to the merits, and the District Court decreed that the contracts between Phillips and petitioners had not been "effectively terminated and that each of such contracts remain [sic] in full force and effect." The Court of Appeals for the Tenth Circuit affirmed, 174 F. 2d 89, and we brought the case here, 338 U. S. 846, because it raises in sharp form the question whether a suit like this "arises under the Constitution, laws or treaties of the United States," 28 U. S. C. § 1331, so as to enable District Courts to give declaratory relief under the Declaratory Judgment Act. 48 Stat. 955, as amended, now 28 U. S. C. § 2201.

"[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 240. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, "jurisdiction" means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act. Prior to that Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plain-

tiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified. See *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 300; *Colegrove* v. *Green,* 328 U. S. 549, 551–52.

If Phillips sought damages from petitioners or specific performance of their contracts, it could not bring suit in a United States District Court on the theory that it was asserting a federal right. And for the simple reason that such a suit would "arise" under the State law governing the contracts. Whatever federal claim Phillips may be able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by petitioners. "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." *Gully* v. *First National Bank,* 299 U. S. 109, 115; compare 28 U. S. C. § 1257, with 28 U. S. C. § 1331. Ever since *Metcalf* v. *Watertown,* 128 U. S. 586, 589, it has been settled doctrine that where a suit is brought in the federal courts "upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character." But "a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws." *Tennessee* v. *Union & Planters' Bank,* 152 U. S. 454, 464. The plaintiff's claim itself must present a federal question "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor* v. *Anderson,* 234 U. S. 74, 75–76; *Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149, 152.

These decisions reflect the current of jurisdictional legislation since the Act of March 3, 1875, 18 Stat. 470, first entrusted to the lower federal courts wide jurisdiction in cases "arising under this Constitution, the Laws of the United States, and Treaties." U. S. Const. Art. III, § 2. "The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this court, to contract the jurisdiction of the Circuit Courts [which became the District Courts] of the United States." *Tennessee* v. *Union & Planters' Bank, supra* at 462. See also *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185, 188, and *Gully* v. *First National Bank, supra* at 112–14. With exceptions not now relevant Congress has narrowed the opportunities for entrance into the federal courts, and this Court has been more careful than in earlier days in enforcing these jurisdictional limitations. See *Gully* v. *First National Bank, supra* at 113.

To be observant of these restrictions is not to indulge in formalism or sterile technicality. It would turn into the federal courts a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law. Not only would this unduly swell the volume of litigation in the District Courts but it would also embarrass those courts—and this Court on potential review—in that matters of local law may often be involved, and the District Courts may either have to decide doubtful questions of State law or hold cases pending disposition of such State issues by State courts. To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because, as in this case, artful pleading anticipates a defense based on federal law would contravene the whole trend of jurisdictional legislation

by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act. See *Developments in the Law—Declaratory Judgments—1941–1949*, 62 Harv. L. Rev. 787, 802–03 (1949). Since the matter in controversy as to which Phillips asked for a declaratory judgment is not one that "arises under the . . . laws . . . of the United States" and since as to Skelly and Stanolind jurisdiction cannot be sustained on the score of diversity of citizenship, the proceedings against them should have been dismissed.

As to Magnolia, a Texas corporation, a different situation is presented. Since Phillips was a Delaware corporation, there is diversity of citizenship. Magnolia had qualified to do business in Oklahoma and appointed an agent for service of process in accordance with the prevailing Oklahoma statute. Okla. Stat. Ann. tit. 18, § 452 (1937). Magnolia claimed that the subject matter of this proceeding did not arise in Oklahoma within the meaning of its consent to be sued. This contention was rejected below, and we do not reexamine the local law as applied by the lower courts. Under the doctrine of *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U. S. 165, venue was properly laid in Oklahoma; that the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial.

Therefore, in the case of Magnolia we must reach the merits. They relate to two matters: (1) the clause in the contract with Phillips permitting its termination at any time after December 1, 1946, but before the "issuance" of "a certificate of public convenience and necessity" by the Federal Power Commission; and (2) whether this provision was satisfied by Magnolia's notice of termination of December 2, 1946, despite the Commission's order of November 30, 1946. The phraseology "certificate of

public convenience and necessity" in the contract is identic with the phrase in § 7 (c) of the Natural Gas Act. The Court of Appeals equated the term of the contract with that in the statute and in effect deemed its problem to be the proper construction of what constitutes the "issuance" of a "certificate of public convenience and necessity" within the meaning of § 7 (c). So viewing the matter, the court held that the order of November 30, 1946, satisfied the requirement of the contract, and that therefore a certificate of public convenience and necessity had been issued within the terminal period of the contract, and that its termination was not timely.

It will be recalled that the order of November 30, 1946, had three parts: (A) it stated that "A certificate of public convenience and necessity be and it is hereby issued to applicant [Michigan-Wisconsin]"; (B) it imposed certain conditions upon the grant, some of which were to be set forth in a supplemental order; and (C) it said that "For the purpose of computing the time within which applications for rehearing may be filed, the date of issuance of this order shall be deemed to be the date of issuance of the opinions, or of the supplemental order referred to herein, whichever may be the later." 5 F. P. C. at 954, 956. The course of reasoning by which the Court of Appeals concluded that the order of November 30, 1946, satisfied the statutory requirement for a certificate of public convenience and necessity can be briefly summarized. It relied on the grammatical argument that the Commission used the present tense in its order and subsequently referred to it as an order "issuing a certificate of public convenience and necessity," e. g., 6 F. P. C. 1, 37; the conditional nature of the order was not deemed to impair its efficacy since § 7 (e) of the Natural Gas Act authorized the Commission "to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public

convenience and necessity may require"; and the provision of the order connecting the date of the order's issuance with the time defined for securing a rehearing was thought relevant only to the supplemental order.

We are not persuaded now to rest decision on the analysis of the Court of Appeals which led to its conclusion. We need not linger long on the merely grammatical argument of that court; it is given more weight than it can bear. Of course, the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been "issued." Section 16 of the Act provides that "Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe." But surely a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest. Here the content of the order of November 30, 1946, was not made public until December 2, 1946, the date of the termination notice.

The Commission itself in its rule for computing rehearing time distinguishes between "adoption" of an order and its "issuance." [1] However, as a matter of

---

[1] Rule 13 (b) of the Commission's Rules of Practice and Procedure provides: "In computing any period of time involving the date of the issuance of an order by the Commission, the day of issuance of an order shall be the day the Office of the Secretary mails or delivers copies of the order (full text) to the parties or their attorneys of record, or makes such copies public, whichever be the earlier. . . . The day of issuance of an order may or may not be the day of its adoption by the Commission." 18 C. F. R. § 1.13 (b). A deposition taken of the Secretary of the Commission gave light on this point. The Commission's previous rule on rehearing time is in 18 C. F. R. Cum. Supp. § 50.75.

Rule 13 (c) provides: "Orders of the Commission shall be effective as of the dates of issuance unless otherwise specifically provided in

usage, the Commission has referred to an order as having "issued" a certificate on a particular date when in fact the date was that of "adoption." See, *e. g., Arkansas Louisiana Gas Co.*, 5 F. P. C. 813, 897; cf. *Pacific Gas & Elec. Co.*, 5 F. P. C. 824, 901. Finally, the restriction of the Court of Appeals of the rehearing provision of Part C to the supplemental order finds no support on the face of the order of November 30, 1946. There is nothing to indicate that Part C was not to apply to the entire order for purposes of § 19 of the Act, which allows a rehearing by a party aggrieved "within thirty days after the issuance of such order" and makes such rehearing a prerequisite to judicial review. See 6 F. P. C. 323.

Since the requirements of the Natural Gas Act for the issuance of "a certificate of public convenience and necessity" may be distributive in scope, varying with the different contexts in which the question must be examined, this is not the occasion to decide that these requirements have a single uniform content. Whether the statutory requirement here was satisfied is not a question of fact, the finding of which by the District Court is to be respected unless clearly erroneous. The District Court merely found that the content of the piece of paper dated November 30, 1946, was that day agreed upon in executive session of the Commission and that that fact was made known. But this leaves untouched the legal significance of this action of the Commission, and the Court ought not now in darkness to pronounce on this question.

We are not restricted to disposition of the controversy on so truncated a treatment of the issues that underlie the record. Considering the fact that so to dispose of the case

---

the orders." 18 C. F. R. § 1.13 (c). This provision may be of significance if the effectiveness of a certificate is an issue in proceedings under § 20 or § 21 of the Act. The Court of Appeals did not discuss the bearing of these rules upon this case.

would involve determination of an important problem concerning a regulatory statute with implications of public importance that private litigants naturally enough do not wholly represent and that on these matters neither the courts below nor this Court had the benefit of the experience and illumination of the agency entrusted with the enforcement of the Act,[2] the due administration of justice requires that we should exercise our discretionary power in reviewing cases to "require such further proceedings to be had as may be just under the circumstances." 28 U. S. C. § 2106; *Honeyman* v. *Hanan,* 300 U. S. 14, 25. Accordingly, we think that the proper disposition requires that we vacate the judgment as to Magnolia and remand the case in order that the Court of Appeals either itself or by sending the case back to the District Court can further explore, through ways that may be appropriate, the issues which have been laid bare. See *Kennedy* v. *Silas Mason Co.,* 334 U. S. 249.

The impact of the litigation both here and below was on the proper construction of § 7 (c). Even though the language of the contract may be identic with that of § 7 (c), this language in the contract may have a scope independent of the proper construction of § 7 (c). The same words, in different settings, may not mean the same thing. Compare opinion of Mr. Justice Holmes in *Towne* v. *Eisner,* 245 U. S. 418, with his dissent in *Eisner* v. *Macomber,* 252 U. S. 189, 219. Parties do not necessarily endow statutory language in a contract with the scope of the statute, particularly when the same term may have variant meanings for different applications of the statute. See *Standard Oil Co.* v. *Johnson,* 316 U. S.

---

[2] The significance of the conditions in qualifying what is formally called a "certificate" in the order of November 30, 1946, is precisely one of those matters upon which Commission practice and experience may shed helpful light.

481, 483. Of course the statutory meaning in the context of the entire Natural Gas Act may not be irrelevant. In remanding the case we do not mean to foreclose this line of inquiry.[3]

In respect to Magnolia, the judgment of the Court of Appeals is vacated and the cause remanded for further proceedings not inconsistent with this opinion. As to Skelly and Stanolind, we reverse the judgment with directions that the cause be dismissed.

*It is so ordered.*

Mr. Justice Black agrees with the Court of Appeals and would affirm its judgment.

Mr. Justice Douglas took no part in the consideration or disposition of this case.

Mr. Chief Justice Vinson, with whom Mr. Justice Burton joins, dissenting in part.

I concur in that part of the Court's judgment that directs dismissal of the cause as to Skelly and Stanolind. I have real doubts as to whether there is a federal question here at all, even though interpretation of the contract between private parties requires an interpretation of a federal statute and the action of a federal regulatory

---

[3] In its conclusions of law, the District Court stated: "The certificate issued by the Commission to Michigan-Wisconsin on November 30, 1946, although containing terms and conditions, was and is a certificate issued under the requirements of the Natural Gas Act and one that is provided for by that act. A consideration of the contracts between plaintiff and defendants, together with the contract between plaintiff and Michigan-Wisconsin, compels a conclusion that such certificate was one within the contemplation of the parties and satisfied the terms of the contracts."

The context suggests that in the second sentence the District Court may still have been focusing upon statutory meaning.

body. But the Court finds it unnecessary to reach that question because it holds that the federal question, if any, is not a part of the plaintiff's claim and that jurisdiction does not, therefore, attach. While this result is not a necessary one, I am not prepared to dissent from it at this time.

But I am forced to dissent from the vacation and remand of the cause in respect to Magnolia. I think that, as to this petitioner, the judgment of the Court of Appeals should be affirmed. The Court decides that the Court of Appeals erred in holding that the Federal Power Commission had issued a certificate of public convenience and necessity to Michigan-Wisconsin Pipe Line Company on November 30, 1946, despite the fact that on that date the Commission adopted an order stating that "A certificate of public convenience and necessity be and it is hereby issued to Applicant, upon the terms and conditions of this order, . . . ." This disregard for what the District Court found to be the Commission's express intention is based upon two alternative grounds. First, it is suggested that while the order issuing the certificate was "adopted" on November 30, it was not "issued" until December 2. Second, it is said that Part C of the November 30 order, which concerned the date of issuance of the order for purposes of applications for rehearing, precludes a finding that a certificate was issued on November 30. Neither of these grounds, in my judgment, supports the Court's conclusion.

As to the first, which was not argued here nor in the Court of Appeals, it is true that the Commission's rules provide that an *order* is not to be deemed "issued" until the full text is mimeographed and mailed to the parties to the proceeding. This usually follows within two or three days after the order is "adopted." The only purpose of the postponement of the date of issuance of the

order, so far as we are informed, is to postpone the running of the 30-day period for applications for rehearing until the full text is available to the parties who have standing to ask for rehearing.

But the Commission uniformly refers to the date of *adoption* of the order as the date upon which the certificate of public convenience and necessity was "issued."[1] It did so in this case, when, on March 12, 1947, it issued a supplemental order referring to its "order of November 30, 1946, issuing a certificate of public convenience and necessity." Furthermore, the District Court found as a fact that

> "On November 30, a Saturday, the Commission in executive session made an order granting, with conditions, a certificate of public convenience and necessity to the Michigan-Wisconsin Pipe Line Company. During this session as the members of the Commission came to agreement as to the wording of the order, Mr. Fuquay, the secretary of the Commission, prepared the order in full and exact text. The secretary was directed by the Commission to release the order immediately."

Following adjournment on that day, the secretary sent a telegram to the parties to the proceeding, informing them that the "Commission today . . . adopted Opinion and Order, in Docket No. G–669, issuing certificate, with conditions, to Michigan Wisconsin Pipe Line Company." On the same day, releases to the press were made announcing the action taken by the Commission.

Skelly, Stanolind and Magnolia were not parties to this proceeding. It may very well be that the date of issuance of the order granting the certificate is December

---

[1] See, *e. g., Arkansas Louisiana Gas Co.,* 5 F. P. C. 813, 897; *Pacific Gas & Elec. Co.,* 5 F. P. C. 824, 901.

2 or some later date—for purposes of rehearing upon application of the parties. But I think there is no question that the certificate, as distinguished from the order, was issued on November 30. That is the Commission's view, as indicated by its supplemental order. The fact that it takes a few days to get its orders mimeographed and the Commission has adopted a rule that, in fairness to the parties, the time for rehearing shall not begin to run until such orders, in full text, are available, does not mean that the issuance of the certificate is also held in abeyance until that time.

The second argument requires but short answer. Part C provides that

"For the purpose of computing the time within which applications for rehearing may be filed, the date of issuance of this order shall be deemed to be the date of issuance of the opinions, or of the supplemental order referred to herein, whichever may be the later."

The paragraph means just what it says. I do not understand the Court to hold that the Commission cannot thus postpone the running of the time for rehearing. Computation of that time, as I have indicated, has no necessary relation to the date of issuance of the certificate.

I think that the Commission intended to and did issue a certificate of public convenience and necessity to Michigan-Wisconsin Pipe Line Company on November 30, 1946, whatever the date of its order, for purposes of computation of time for rehearing. The crucial clause of the contract refers to "the issuance of such certificate [of public convenience and necessity]." By their inclusion of a provision dependent upon the action of a federal agency, it is obvious that the parties intended that the contract should be construed with reference to the effec-

tive date of agency action under the statutes and the practices of the Commission. The District Court so concluded.[2] I can see no reason, therefore, to remand the cause for further proceedings. In my view, effective agency action was taken on November 30, 1946. As to Magnolia, I would affirm the judgment of the Court of Appeals.

---

[2] The District Court stated as one of its conclusions of law: "The certificate issued by the Commission to Michigan-Wisconsin on November 30, 1946, although containing terms and conditions, was and is a certificate issued under the requirements of the Natural Gas Act and one that is provided for by that act. A consideration of the contracts between plaintiff and defendants, together with the contract between plaintiff and Michigan-Wisconsin, compels a conclusion that such certificate was one within the contemplation of the parties and satisfied the terms of the contracts."