CROWN CORK & SEAL COMPANY, INC.

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION.

Civ. A. No. 77–4170.

United States District Court, E. D. Pennsylvania.

Jan. 3, 1979.

Edward D. McDevitt, Michael J. Stack, Philadelphia, Pa., for plaintiff.

James D. Keeney, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Crown Cork & Seal (Crown Cork) has asked this court to declare that I.R.C. § 6103 does not allow it to disclose its payroll records to the Pennsylvania Human Relations Commission (Commission) and justifies its refusal to comply with the Commission's orders and subpoenas. This court lacks jurisdiction over such an action. *Public Service Commission of Utah v. Wycoff*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328, 1930–31 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). *See La-*

*Chemise Lacoste v. Alligator Co., Inc.*, 506 F.2d 339, 343 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237, 241 (3d Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973).

Plaintiff, Crown Cork, is a corporation which is currently involved in proceedings before the defendant Commission. In 1970 and 1971 the Commission and several individuals filed complaints against Crown Cork charging it with discrimination against females in violation of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43 §§ 951–963 (Purdon) (hereinafter the Act). As provided by the Act, the Commission then began to gather information for presentation at a public hearing. Following a pre-hearing conference on February 10, 1977, a Commissioner issued an order requiring plaintiff to produce the payroll records of all persons employed by it from July 9, 1969, to the present. The following month the Commissioner subpoenaed those records.

Crown Cork failed to comply with both the order and the subpoena. On August 1, 1977, the Commission moved for the production of computer record layout data pertaining to persons employed by Crown Cork during the period in question. On August 9, 1977, Crown Cork filed an answer to the Commission's motion. Crown Cork objected to disclosing any payroll records and argued that I.R.C. § 6103 prohibited the disclosure of such information. The Commissioner overruled Crown Cork's objection and ordered it to produce the documents requested. Crown Cork petitioned the Commission for reconsideration of that order but on October 20, 1977, the Commissioner denied the petition. Although the Commission has not tried to enforce its orders, Crown Cork filed this action in December, 1977.[1]

■ Crown Cork asks this court to declare that I.R.C. § 6103 prohibits it from disclosing the documents which the Commission seeks.[2] Section 6103 is the Internal Revenue Code's confidentiality provision. It carries out two basic policy objectives. First, it assures taxpayers that the returns

1. The Commission has not alleged, and the court does not find, that there is a ripeness problem in this case. *Compare Public Service Commission of Utah v. Wycoff*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (case held not ripe for decision because defendant had not threatened any action). The Commission's failure to initiate enforcement proceedings seems to reflect its wish to allow Crown Cork to exhaust its judicial remedies before demanding compliance. This is sensible since the issues now being litigated are the same as those that would have to be decided in an enforcement proceeding. Given that the Commission has issued subpoenas and ordered the production of documents, its conflict with Crown Cork is imminent and therefore ripe for decision in a declaratory judgment action such as this one.

2. Section 6103 provides that:
(a) GENERAL RULE.—Returns and return information shall be confidential, and except as authorized by this title—
(1) no officer or employee of the United States,
(2) no officer or employee of any State or of any local child support enforcement agency who has or had access to returns or return information under this section, and
(3) no other person (or officer or employee thereof) who has or had access to returns or

return information under subsection (e)(1)(D)(iii) or subsection (n),
shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.
(b) DEFINITIONS.—For purposes of this section—

(2) RETURN INFORMATION.—The term "return information" means—
(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, . . .

(e) DISCLOSURE TO PERSONS HAVING MATERIAL INTEREST.—
(1) IN GENERAL.—The return of a person shall, upon written request, be open to inspection by or disclosure to—

(D) in the case of the return of a corporation or a subsidiary thereof—

(iii) any bona fide shareholder of record owning 1 percent or more of the outstanding stock of such corporation,

and information which they supply to the government in connection with the assessment and payment of taxes will not become public knowledge. I.R.C. § 6103(a). Second, it provides for access to the information by persons who are deemed to have a material interest therein.[3] I.R.C. § 6103(e). Under § 6103(e)(1)(D)(iii) holders of more than one percent of the stock of a corporation are deemed to have a material interest in the corporation's returns and are therefore given access to them. However, anyone who has had access to the information pursuant to that provision may not disclose it to anyone else. § 6103(a)(3).

Crown Cork owns more than one percent of its own stock. Notwithstanding that Crown Cork did not obtain the information in question either from the government or as a result of its position as a one percent stockholder, it has taken the position that the precise language of § 6103(a) applies to it and prohibits it from disclosing the information which the Commission seeks. Due to the jurisdictional problems presented by the procedural posture of this case this court need not decide the merits of Crown Cork's claim.

Crown Cork avers that 28 U.S.C. § 1331 gives this court jurisdiction to hear its claim. It maintains that since it is asking the court to construe I.R.C. § 6103, a federal statute, the case "arises under the . . . laws . . . of the United States." 28 U.S.C. § 1331. This oversimplification ignores the impact of the Supreme Court's decisions on the scope of federal question jurisdiction. In particular, the Court has refused to find federal question jurisdiction where the federal question arises only as a defense to a state law claim. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). That is precisely the situation in this case; plaintiff's § 6103 claim arises only as a defense to the defendant's state law action to compel the production of documents.

Although *Mottley* did not involve a declaratory judgment action, the Supreme Court's opinion in that case provides the starting point for an analysis of the issues presented in this case. The plaintiffs in *Mottley* brought an action in federal court seeking specific performance of their contract with the defendant railroad. They claimed that the defendant had agreed to provide them with free passes for the rest of their lives and that a subsequent act of Congress which forbade the giving of free passes did not excuse the railroad's noncompliance with the terms of the contract. If it did, the plaintiffs argued, it was unconstitutional. Since any determination by the court required it to construe the federal statute, the plaintiffs averred that the court had federal question jurisdiction. The Supreme Court thought otherwise; it dismissed the action for lack of subject matter jurisdiction.

In *Mottley* the Court announced what has become known as the well pleaded complaint rule. The Court reasoned that although the plaintiffs had referred to the federal statute in their complaint, they would not have done so if they had pleaded correctly. The statute was relevant to the case only as a defense to the plaintiff's future breach of contract (state law) claim; it gave the plaintiffs no affirmative rights which they could ask a federal court to enforce. Therefore, it did not belong in the complaint. As the Court explained,

[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.

---

**3.** The word "person" used herein shall have the meaning given to it by I.R.C. § 7701(a)(1).

211 U.S. at 152, 29 S.Ct. at 43. The Court therefore held that it did not have jurisdiction over the subject matter of the complaint. 211 U.S. at 152, 29 S.Ct. 42.

Crown Cork argues that its case does not contravene the teachings of *Mottley* because it seeks an affirmative declaration of its rights under I.R.C. § 6103, an act of Congress. Plaintiff is correct only if the Declaratory Judgment Act substantially expands the jurisdiction of the federal courts. It does not. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

▇▇▇▇ The Declaratory Judgment Act allows one who would otherwise be a defendant to obtain a determination of his rights before anyone has instituted an action against him. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The Declaratory Judgment Act is only a procedural device and does not expand the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co., supra*, at 671–72, 70 S.Ct. 876. To determine the existence of federal question jurisdiction in a declaratory judgment action the court must proceed with the knowledge that "in many actions for declaratory judgment, the realistic position of the parties is reversed." *Public Service Commission of Utah v. Wycoff*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). In this case that means that the court must proceed as if the Commission were the plaintiff. The court must determine whether a federal question would appear on the face of the Commission's well pleaded complaint. *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). It is clear that it would not.

The Commission's complaint against Crown Cork would allege only sex discrimination in violation of state law.[4] Like the holders of the rail passes in *Mottley*, the Commission could not obtain federal jurisdiction by anticipating a defense to its request for the production of documents. As in *Mottley*, the federal courts would not have jurisdiction over the claim. Crown Cork cannot change this result by bringing a declaratory judgment action. To hold otherwise would be to allow the Declaratory Judgment Act to expand federal jurisdiction. That I cannot do. *Aetna Life Insurance Co. v. Haworth, supra*, 300 U.S. at 240, 57 S.Ct. 461.

Case law in both the Supreme Court and the Third Circuit supports this conclusion. In *Public Service Commission v. Wycoff*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the Supreme Court stated that:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

344 U.S. at 248, 73 S.Ct. at 242–43. The plaintiff in *Wycoff* asked the court to declare that its carriage of motion picture films between points within a single state constituted interstate commerce. It also asked the court to enjoin the Public Service Commission from interfering with such carriage over routes authorized by the Interstate Commerce Commission. The district court dismissed the complaint after trial but the court of appeals reversed. The

---

4. Even if the Commission could bring an action solely to enforce its subpoena and order, that action would have to be based on Pa.Stat.Ann. tit. 43 § 957 (Purdon), the statute that gives it the right to subpoena documents in connection with an investigation. The plaintiff could only raise the § 6103 issue as a defense to that action.

Supreme Court reinstated the order of the district court and held that since the plaintiff had failed to show that the defendant threatened any interference with its routes, its claim was therefore not ripe for adjudication. 344 U.S. at 245, 73 S.Ct. 236.

The Court did not rest solely on its disposition of the ripeness issue, however. As shown by the above excerpt the Court also expressed considerable doubt over whether the district court had subject matter jurisdiction of the claim. 344 U.S. at 248, 73 S.Ct. 236. Its analysis of the issue, though dicta, is significant for two reasons. First, it follows precisely the same analysis and reaches precisely the same conclusion that an independent review of the authorities suggests; it is logically correct. Second, it is the law of this circuit. *LaChemise Lacoste v. Alligator Co., Inc.*, 506 F.2d 339, 343 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237, 241 (3d Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972).

The Court of Appeals for the Third Circuit first had this issue before it in *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). The plaintiffs in that case were manufacturers of carpet backing who sought a declaratory judgment on the invalidity of certain patents. They averred that the action "arose under" the patent laws and that 28 U.S.C. § 1338(a) therefore conferred subject matter jurisdiction on the district court.[5] The district court nevertheless dismissed the action for lack of jurisdiction. A panel of the court of appeals unanimously affirmed. Relying entirely upon what it called "the rationalization" of the Court in *Wycoff*, the court of appeals held that:

[T]he question of the validity of the patents would arise only as a defense asserted by the present plaintiff [in an action by the defendant for breach of its royalty contract]. Hence, the controversy does not "arise under" the patent laws. (Citations omitted).

448 F.2d at 1330–31.

Dismissal of the plaintiff's action in the instant case follows *a fortiori* from *Thiokol*. *Thiokol* presented a much stronger case for finding federal question jurisdiction than this case does. If jurisdiction did not exist there, it cannot exist here. Unlike the defendants in this case, the defendants in *Thiokol* could have brought a federal action against the plaintiffs—the defendants could have sued for infringement directly under the patent laws. Although the court recognized this, it found that the defendants had not threatened to follow such a course. Since the defendants had only threatened to bring an action pursuant to state contract law, the court decided the jurisdictional issue on that basis. *Thiokol Chemical Corp. v. Burlington Industries, Inc., supra*, at 1330, n. 2.

In *Thiokol* the court might have easily concluded that since the defendant *could* have properly brought a federal action, the case arose under federal law notwithstanding that the plaintiffs' claim for declaratory relief presented a defense to such an action—the court could have treated the defense as mere surplusage. If the court of appeals declined to find jurisdiction under those circumstances, it follows that it would not find jurisdiction in the case at bar. In *Thiokol* the plaintiff was threatened with a claim that could have been brought under either federal (patent) or state (contract) law. In this case there is not even the possibility that the defendant, the Pennsylvania Human Relations Commission, could bring a federal action against the plaintiff.

---

**5.** 28 U.S.C. § 1338(a) provides that:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

If there was no federal question jurisdiction in *Thiokol*, there can be no federal question jurisdiction in this case.

In *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237 (3d Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973), the court of appeals again examined this issue. The facts of *Allegheny* closely parallel those of the instant case. The plaintiff in *Allegheny* had discontinued service along a particular route without first obtaining the defendant's permission. The defendant fined the plaintiff for this failure and the plaintiff brought a declaratory judgment action in federal court; it asked the court to declare that the defendant's regulations were invalid because they sought to regulate an area pre-empted by federal law. The district court found that the case did not present a federal question. Since the parties were citizens of different states, however, the court found that 28 U.S.C. § 1332 gave it jurisdiction over the subject matter of the action.

The court of appeals decided that it should review the district court's decision on the issue of federal question jurisdiction even though neither party had appealed from it. The court then affirmed that decision. 465 F.2d at 241. Relying on *Wycoff*, it held that the district court had correctly decided that the case did not present a federal question. Judge Rosenn, writing for the court, agreed with the district court's conclusion that:

> In suits in the federal courts arising out of proceedings pending or threatened in state tribunals, the federal court's jurisdiction may not be predicated upon federal question defenses to the state proceedings. It is only if the state *complaint* raises federal questions that the federal court's jurisdiction may be based on federal question grounds. (Citations and footnotes omitted. Emphasis in original.)

*Allegheny Airlines, Inc. v. Pennsylvania PUC*, 319 F.Supp. 407, 411 (E.D.Pa.1970). The court of appeals found that *Wycoff* "strongly support[ed]" this conclusion. 465 F.2d at 241.

This case is indistinguishable from *Allegheny*. In both cases a state regulatory agency had begun proceedings against the federal plaintiff. In both cases the plaintiff sought a federal determination of its rights under federal law. In both cases the federal claim was meaningful only as a defense to the state law claims. If *Allegheny* did not present a federal question neither does this case.

In *LaChemise Lacoste v. Alligator Co., Inc.*, 506 F.2d 339 (3d Cir. 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975), the court again relied on *Wycoff*. That case differed from this one because it involved removal of a declaratory judgment action brought in state court. Although the court concluded that *Wycoff* did not address the issue of federal question jurisdiction over a declaratory judgment action removed from a ·state court, the court nevertheless approved the *Wycoff* dicta as well as the reasoning behind it.[6] 506 F.2d at 343, nn. 3–4.

*LaChemise Lacoste* also reaffirmed the continued vitality of the court's decision in *Thiokol*. The plaintiffs in *LaChemise Lacoste* sought a declaration of their right to use a certain trademark and an injunction against interference with that right. However, the court reasoned that even if *Wycoff* applied to the peculiar circumstances of the case before it, a federal court would not have jurisdiction of the case. As in *Thiokol* the court concluded that "[t]he 'character of the threatened action' was not necessarily federal in nature." 506 F.2d at 346 (footnote omitted). Since "federal relief was only one of three available avenues of litigation," the court found no basis for the exercise of federal question jurisdiction. 506 F.2d at 346. In this case, where federal

---

**6.** The court would not rest its decision on *Wycoff* because it felt that the fact that the case involved a state declaratory judgment action removed to federal court made *Wycoff* distinguishable because "in the instant case we are constrained *both* by principles for determining federal question jurisdiction and by those governing removal procedure." (emphasis added). 506 F.2d at 343.

relief is not an available avenue of litigation at all, the absence of jurisdiction follows inexorably.

In conclusion, *Mottley, Wycoff, Thiokol, Allegheny,* and *LaChemise Lacoste* all command dismissal of this action. *Wycoff* follows logically from *Mottley* and the procedural nature of the Declaratory Judgment Act. This circuit has expressly adopted its reasoning; this court must follow its dictates. Crown Cork's action must be dismissed.

Crown Cork's belated reliance on 28 U.S.C. § 1340 does not alter this conclusion. Although in its complaint Crown Cork alleged jurisdiction under § 1331 only, in supplemental memoranda filed at the court's request Crown Cork argued that 28 U.S.C. § 1340 also gave this court jurisdiction over its claim. Section 1340 provides that:

> The district courts shall have original jurisdiction of any civil action *arising under* any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court. (Emphasis supplied).

Section 1340 has no requirement of jurisdictional amount. It therefore allows Crown Cork to defeat the Commission's argument that this court lacks jurisdiction because Crown Cork failed to allege that the amount in controversy exceeded $10,000, as required by § 1331. However, § 1340 does not remove the need for determining whether the case "arises under" an Act of Congress—here, the Internal Revenue Code. The issue is precisely the same as the issue involved in determining the existence of general federal question jurisdiction under § 1331: the court must determine whether the action, not the defense, "arises under" the Internal Revenue Code. Clearly, the defense does; unfortunately for Crown Cork, the action does not.

*Thiokol* supports this conclusion. In that case the plaintiff alleged that 28 U.S.C. § 1338(a), the provision which gives the district courts jurisdiction over all actions "arising under" the patent laws, gave the court jurisdiction over its claim.[7] The court of appeals disagreed, applying the *Wycoff* analysis. 448 F.2d at 1330. By relying on *Wycoff* and thus applying the same analysis to both § 1331 and § 1338(a) actions, the court demonstrated that the words "arising under" required a consistent interpretation when construed in the context of a jurisdictional statute.

This conclusion is sound. The various specific jurisdictional statutes do little more than provide exceptions to the jurisdictional amount requirement of § 1331.[8] The requirement that the case "arise under" some Act of Congress remains unchanged. Therefore while § 1340 solves the jurisdictional amount problem, it does not solve the more difficult jurisdictional problem. It does not say whether the case "arises under" the Internal Revenue Code or is merely a defense to a state law claim. As *Mottley, Wycoff,* and the Third Circuit cases show, this case does not arise under federal law. Crown Cork's claim is merely a defense to a state law action and must be dismissed.

Since I am holding that the case does not arise under the laws of the United States and that the federal courts lack jurisdiction over the subject matter of this complaint, I do not reach the other issues raised by the parties.[9]

---

7. *See* note 5 and accompanying text *supra.*

8. Given the limitations which Article III of the Constitution places on the jurisdiction of the federal courts, it is doubtful that the various jurisdictional statutes could do more than waive the congressionally imposed jurisdictional amount requirement. Like the Constitution itself, these statutes limit federal jurisdiction to cases "arising under" federal law. Aside from waiving jurisdictional amount they add little to § 1331, although a few, such as § 1338(a) also make the jurisdiction of the district court exclusive, as the Constitution requires.

9. If this court had jurisdiction I would have to decide whether I should abstain from deciding the case on the ground that the question had been submitted for determination to the state administrative agency. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Cf. Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (federal courts will abstain from deciding an issue which is

The court will enter an order dismissing this case pursuant to Fed.R.Civ.P. 12(h)(3).

pending in a criminal case before a state tribunal). *But cf., Johnson v. Kelly*, 583 F.2d 1242 (3d Cir. 1978) (Younger will not be extended beyond quasi-criminal proceedings, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)). If I decided not to abstain I would have to decide whether the plaintiff is really asking the court to enjoin a state proceeding. If so, I would have to decide whether such an injunction would be appropriate in light of 28 U.S.C. § 2283. Only if I decided that a federal court could grant such relief would I have to decide the merits.