The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

The GOLD BONDHOLDERS PROTECTIVE COUNCIL, INC., Defendant.

Civ. A. No. 80–278.

United States District Court, D. Delaware.

Jan. 15, 1981.

S. Samuel Arsht, William O. LaMotte, III and Thomas Reed Hunt, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. and Weston W. Marsh and Gus Svolos, Chicago, Ill., of counsel, for plaintiff.

Norman M. Monhait of Morris & Rosenthal, P. A., Wilmington, Del., for defendant.

## OPINION

LATCHUM, Chief Judge.

This case raises rudimentary but recurrent questions concerning the proper scope of federal court jurisdiction. Plaintiff, the Atchison, Topeka and Santa Fe Railway Company ("Santa Fe"), seeks a declaratory judgment that a gold payment clause contained in mortgage bonds issued in 1895 by plaintiff's corporate predecessor, under which plaintiff is obligated to make interest and principal payments on the bonds in gold coin or its equivalent, is void under federal law. Defendant, the Gold Bondholders Protective Council, Inc. ("the Council"), a corporation formed for the purpose of undertaking efforts to enforce contractual rights to payment in gold, has moved to dismiss plaintiff's complaint on the ground that Santa Fe's claim does not "arise under" federal law. The Court agrees that it is without jurisdiction to consider this action and accordingly, defendant's motion to dismiss will be granted.

### I.  *Background*

In 1895, a predecessor corporation of Sante Fe issued for public purchase a series of 100 year general mortgage bonds which at maturity would have an aggregate face value in excess of $100 million. (Docket Item ["D.I."] 1, ¶ 6.) These bonds are in the form of bearer coupon bonds and registered bonds, and are traded on the New York, London and Boston stock exchanges. (D.I. 8, ¶ 2.) The principal on both classes of bonds is due in 1995, with 4% interest payable semi-annually on April 1, and October 1 at Santa Fe's offices in New York City. (D.I. 1, ¶ 7; D.I. 10, p. 4.) The most significant feature of the bonds, however, is the "gold clause" which provides that payment of the principal and interest will be made to the holder in gold coin, or its equivalent. (D.I. 1, ¶ 8.)

The Council is the holder of one $1,000 registered bond on which it is entitled to receive semi-annual interest payments, and four $10.00 and two $20.00 interest coupons from bearer bonds, payment on which is presently due. (D.I. 10, p. 4.) On or about April 15, 1980, a representative of the Council personally presented one $20.00 interest coupon and a Santa Fe check for $20.00 representing the April 1 semi-annual interest payment on the registered bond, at Santa Fe's offices in New York City and demanded that Santa Fe pay the interest in gold coin or its equivalent. Santa Fe predictably refused. (D.I. 1, ¶ 12; D.I. 8, ¶ 4.)

On May 14, 1980, the Council and other holders of plaintiff's general mortgage

bonds filed suit against Santa Fe in the Superior Court for the State of Alaska, Third Judicial District, in an action captioned *Gold Bondholders Protective Council, Inc., et al. v. Atchison, Topeka and Santa Fe Railway Company, No. 3AN-8-3351* Civ. ("Alaska suit") (D.I. 9, Ex. A). In that suit, the Council seeks either specific performance of Santa Fe's purported contractual obligation to pay interest and principal due on the mortgage bonds in gold coin or its equivalent, or damages for Santa Fe's alleged breach of its contractual obligation. (*Id.*)

Approximately three weeks after the Alaska suit was filed, on June 3, 1980, Santa Fe instituted this action, seeking a judicial declaration that the gold clause contained in the mortgage bonds is void under federal law. (D.I. 1, p. 5.) Specifically, plaintiff argues that enforcement of the gold clause is barred by the Congressional Joint Resolution of June 5, 1933, 31 U.S.C. § 463 ("Joint Resolution") (D.I. 1, ¶ 9), which declared that gold clauses were against public policy and further provided that obligations incurred both before and after passage of the Joint Resolution "shall be discharged upon payment dollar for dollar, in any coin or currency which at the

time of payment is legal tender for public and private debts."[1] Jurisdiction of the declaratory judgment action filed in this Court is predicated on 28 U.S.C. § 1331. (D.I. 1, ¶ 5.)[2]

The Council has moved to dismiss on the grounds that Santa Fe's complaint here seeks merely to establish a federal defense to the pending state court litigation and thus does not present a claim "arising under" the laws of the United States.[3] In response, Santa Fe avers that both the federal declaratory action and the Alaska suit concern matters of currency in which federal law has absolutely preempted state law; consequently the construction and enforcement of the gold payment clause raises questions of federal law sufficient to uphold federal question jurisdiction. Alternatively, plaintiff argues that the validity of the gold clause presents "a pivotal question of federal law," requiring consistent application of federal legal principles by federal courts, and that practical considerations of policy and reason dictate the exercise of the Court's jurisdiction.

## II. *Discussion*

The operation of the Declaratory Judgment Act is solely procedural in na-

[1] In the Act of October 28, 1977, Pub.L. No. 95 147, 91 Stat. 1229, Congress made the Joint Resolution inapplicable to obligations issued on or after October 28, 1977.

[2] The declaratory judgment action as alleged in the complaint arises under the following laws of the United States: the Joint Resolution, 31 U.S.C. § 463, the Act of Congress of September 21, 1973, Pub.L. No. 93–110, § 3, 87 Stat. 352; and the Act of Congress of August 14, 1974, Pub.L. No. 93–373, § 2, 88 Stat. 445. As noted previously, the Joint Resolution provided that gold clauses contained in obligations incurred both before or after the effective date of the Joint Resolution were void and unenforceable. The constitutionality of the Joint Resolution as applied to private obligations was upheld by the Supreme Court in *Norman v. Baltimore & O.R. Co.,* 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935). In the Act of September 21, 1973, Congress repealed sections 3 and 4 of the Gold Reserve Act of 1934. 31 U.S.C. §§ 442 and 443. Subsequently, in the Act of August 14, 1974, the Congress provided that no provisions of any law may be construed to prohibit any person from purchasing, holding, selling or other-

wise dealing in gold in the United States or abroad. *See Southern Capital Corporation v. Southern Pacific Company,* 568 F.2d 590, 592 (C.A.8), *cert. denied,* 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978). It is unclear why these latter two statutory provisions are alleged in plaintiff's complaint as a basis for jurisdiction.

[3] The Council alternatively argues as an independent ground for dismissal of the complaint that Santa Fe's obligation to the Council at the time the federal suit was filed could not possibly exceed $3,500 and, accordingly, the amount in controversy necessary to confer jurisdiction on this Court has not been met. In view of the Court's disposition of the federal question issue, consideration of this separate ground for dismissal is not necessary. Additionally, the Council has moved that the federal declaratory action be stayed pending resolution of the Alaska suit if the Court decides that it properly may entertain this action. In its brief in support of its motion to dismiss, however, the Council stated that it would not press for abstention at this time but would renew its request for a stay at a later date, if necessary.

ture. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). The Act allows one who would otherwise be a defendant to obtain a declaration of his rights prior to the commencement of coercive proceedings against him, *see Crown Cork & Seal Co. v. Pa. Human Relations Comm.*, 463 F.Supp. 120, 124 (E.D.Pa.1979), but was not intended to expand the jurisdiction of the federal courts. *Id.* Thus in declaratory judgment suits such as this, the plaintiff must demonstrate an independent statutory basis of jurisdiction which empowers the federal court to entertain the action.

In recognition of this axiom of federal procedure, the courts have attempted to define the boundaries of the declaratory judgment remedy on several occasions. Perhaps the most significant and oft-quoted pronouncement came in *Public Services Commission of Utah v. Wycoff*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), in which the Supreme Court *in dicta* observed:

> [I]n many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in [state] courts.... Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one,

normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Id.* at 248, 73 S.Ct. at 242.

■ The logical effect of the *Wycoff* dicta was to give substance to the characterization of the Declaratory Judgment Act as a mere procedural device. Under the *Wycoff* rationale, a declaratory action which seeks to establish a defense to a threatened coercive suit is triable in federal court only if the coercive suit complaint in itself would properly raise a federal question. *Id.*; *see* Note, *Developments in the Law—Declaratory Judgments*, 62 Harv.L.Rev. 787, 803 (1949). As a result, the courts must employ conventional coercive actions as a reference point from which to determine whether federal jurisdiction in a declaratory suit is proper, *see* Note, *supra* at 803, and declaratory plaintiffs possess no greater leverage in invoking federal jurisdiction than they possessed prior to passage of the Act.

■ The *Wycoff* approach has been generally adopted by the Third Circuit. *See La Chemise La Coste v. Alligator Co., Inc.*, 506 F.2d 339, 343 (C.A.3, 1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Comm.*, 465 F.2d 237, 241 (C.A.3, 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328, 1330 (C.A.3, 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 688 (1972); *Crown Cork & Seal Co. v. Pa. Human Relations Comm., supra*, 463 F.Supp. at 125. Accordingly, since it is clear that Santa Fe seeks to establish through this declaratory action a defense to the Alaska suit and any other threatened litigation concerning its gold clause, federal jurisdiction is proper only if the complaint in the pending state action in Alaska properly raises a federal question. The Court finds that it does not.

The complaint filed in the Alaska suit is based solely on breach of contract and seeks either specific performance or damages for

the breach. Questions concerning the construction and application of the Joint Resolution do not appear on the face of the Council's complaint and will arise in the Alaska suit solely as a defense to the Council's state law claim. Moreover, even if the Council had referred to the Joint Resolution in its complaint, the Alaska suit would not "arise under" federal law, since the plaintiff's cause of action must itself present a federal question and a federal claim cannot be injected into a case solely in anticipation of a defense to be asserted by the opposing party. *See Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–1004, 39 L.Ed.2d 209 (1974); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Gully v. First National Bank*, 299 U.S. 109, 115, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). As stated by the Supreme Court:

> [W]here a suit is brought in the federal courts "upon the sole ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character." But "a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws." *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 464 [14 S.Ct. 654, 657, 38 L.Ed. 511]. The plaintiff's claim itself must present a federal question "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76 [34 S.Ct. 724, 58 L.Ed. 1218]; *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 [29 S.Ct. 42, 43, 53 L.Ed. 126].

*Skelly Oil Co. v. Phillips Petroleum Co., supra*, 339 U.S. at 672, 70 S.Ct. at 879.

The case at hand is virtually indistinguishable from *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), in which the Supreme Court refused to find federal jurisdiction because the federal question arose only as a defense to a breach of contract claim. In *Mottley*, the Louisville & Nashville Railroad agreed to give the Mottleys free railroad passes commencing in 1871 and renewable each year for the remainder of their lives, in exchange for the Mottleys' release of a possible personal injury claim against the railroad. In 1906, the Congress passed a law prohibiting the tendering of free passes or free transportation, and, relying on this law, the railroad refused to renew the Mottleys' passes the following year. The Mottleys brought suit in federal court for specific performance of the contract and as a basis for federal jurisdiction argued that the Act of Congress either did not apply to the circumstances of their case, or alternatively was unconstitutional. *Id.* at 150–51, 29 S.Ct. at 42–43.

The Supreme Court dismissed the action for lack of federal question jurisdiction, reasoning that the Mottleys had gained entrance to federal court only by improperly pleading an anticipated defense to their breach of contract action. *Id.* at 152, 29 S.Ct. at 43. Under the "well-pleaded complaint rule," the Court noted, a plaintiff is confined to stating correctly his own cause of action and federal jurisdiction must be determined on the basis of that pleading. *Id.* at 153, 29 S.Ct. at 43. Thus even though it was apparent that a federal question would arise during the course of the litigation and that this question would probably be dispositive of the case, because the issue would surface only in defense to the plaintiff's claim, the Supreme Court held that the cause of action must be dismissed.[4]

Just as the Mottleys could not interpose the 1906 Congressional Act as a basis for

---

4. The Third Circuit also has consistently held that federal court jurisdiction cannot be predicated upon federal questions raised in defense to state created claims even though the federal issue may be important to resolution of the suit. *See e. g., La Chemise La Coste v. Alligator Co., Inc.*, 506 F.2d 339 (C.A.3, 1974), *cert.* denied, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Comm.*, 465 F.2d 237 (C.A.3, 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *Thiokol Chemical Corp. v. Burlington Industries, Inc.*,

federal question jurisdiction, so the Council similarly would be unable to base federal question jurisdiction on the complaint filed in the Alaska suit, since the Joint Resolution would come into question only as a defense to the Council's breach of contract action. Accordingly, because the pending Alaska suit could not properly raise a federal question, the declaratory action in this Court similarly does not contain the proper jurisdictional predicate and must be dismissed.[5] An Order will be entered in accordance with this Opinion.

---

448 F.2d 1328 (C.A.3, 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 688 (1972).

**5.** As previously noted, Santa Fe has offered a number of theories to support its contention that the Council's coercive action in fact arises under federal law. Reduced to their essentials, these arguments demonstrate that the sole issue apparently in dispute in both the Alaska suit and the federal litigation is the construction and application of the Joint Resolution. This state of affairs best illustrates the weaknesses of the present contours of federal question jurisdiction and suggests that a reformulation of principles might be in order. The "well-pleaded complaint rule" which disallows jurisdiction where a federal question is raised only in defense purports to provide a simple rule of thumb for assessing the propriety of jurisdiction. Like any set formula, however, it operates blindly to deprive a federal court of jurisdiction in cases where a federal forum might be preferable. *See* W. Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law*, 115 U.Pa. 890, 894 (1967). Nevertheless, any revision of these elementary principles must await development in the Supreme Court or the Congress and the dismissal of this action for lack of federal question jurisdiction follows inexorably from *Mottley, Wycoff* and the other pertinent cases cited previously in this opinion.