MEMORANDUM OPINION AND ORDER
 

 HELEN S. BALICE, Bankruptcy Judge.
 

 This is the court’s Opinion on a motion for reconsideration occasioned by the court’s lack of clarity when making a bench ruling and in entering a subsequent order.
 

 I.
 
 Background
 

 TWA and its Unsecured Creditors Committee joined in a motion requesting the court to approve a settlement with the International Association of Machinists and Aerospace Workers (IAM) arising out of a dispute relative to collateralization of back pay notes to be distributed to IAM members as provided for in TWA’s confirmed plan. Shawmut Bank, N.A. (Shawmut), as indenture trustee, slot trustee and collateral agent for the holders of “New Five Year Notes” also provided for in the plan objected to the settlement.
 

 The proposed IAM settlement had two components. First, TWA would conduct a solicitation seeking the consent of the holders of the New Five Year Notes to grant to holders of new debt securities collateral in the form of a subordinate lien on the collateral securing the New Five Year Notes. The holders of the new debt securities would include members of the IAM and the securities would be issued in satisfaction of their back pay claims.
 

 The second component was an “interim security package” for the benefit of the IAM and its members pending the consent solicitation. It consisted of the pledge of stock of a newly created subsidiary of TWA whose sole asset would be any “future interest” TWA might have in certain take off and landing slots at specified airports. These slots are currently pledged as collateral for the New Five-Year Notes and are held in a slot trust administered by Shawmut.
 

 The package also contemplated that in the event of a default on the New Five Year Notes a marshalling of assets would be required; that is, Shawmut would be required to satisfy those notes out of collateral other than the slots. This requirement would preserve the value of any future interest TWA or its designee might have in the slots as the “Residual Asset Entity” entitled to receive upon payment in full of the New Five Year Notes the slots then constituting the slot trust assets. TWA would upon approval of the settlement designate its subsidiary as the “Residual Asset Entity”.
 

 In its bench ruling, the court authorized a consent solicitation and permitted the present designation by TWA of its subsidiary as “Residual Asset Entity” to receive the slots constituting the slot trust assets upon the satisfaction and full payment of all obligations due under the New Five Year Notes. In doing so, the court held that this designation does not encumber the collateral pledged to Shawmut. The court repeats each of the above rulings.
 

 II.
 
 Marshalling Order
 

 The court denied TWA and the Committee’s request for a marshalling order (revert-er relief) ruling that the matter was not ripe for adjudication. However, because the parties were granted leave to brief the issue of ripeness as it pertains to the court’s refusal to order marshalling at the hearing, it will address that issue
 
 de novo.
 

 A. The Standard for Ripeness
 

 The United States Constitution limits federal jurisdiction to actual “cases” and “controversies.” U.S. Const, art. Ill, § 2. Although bankruptcy courts are not Article III courts, they are subject to the jurisdictional constraints of Article III to the extent that they exercise the judicial power of the
 
 *94
 
 United States.
 
 Northern Pipeline Const. Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (“Nor can we discern any persuasive reason, in logic, history, or the Constitution, why the bankruptcy courts here established lie beyond the reach of Art. III.”
 
 Id.
 
 at 76, 102 S.Ct. at 2874). The ease and controversy requirement directly prohibits the issuance of advisory opinions and ensures that only disputes of a judiciary nature are decided in the federal courts.
 
 State of N.J. v. Heldor Indus.,
 
 989 F.2d 702, 706 (3d Cir.1993). The case or controversy requirement must be met whenever declaratory relief is sought.
 
 Shelly Oil Co. v. Phillips Petroleum Co.,
 
 339 U.S. 667, 671, 70 S.Ct. 876, 878-79, 94 L.Ed. 1194 (1950).
 

 The doctrine of ripeness is used to determine when an action may be brought by a party with standing to bring such an action. Therefore, the question of ripeness is of particular importance when a declaratory judgment is being sought. In the declaratory judgment context, the test for ripeness focuses on (i) the “adversity of interest” between the parties, (ii) the “conelusivity” that a declaratory judgment would have on the legal relationship between the parties, and (iii) the “practical help, or utility” of a declaratory judgment to the parties.
 
 Armstrong World Indus. v. Adams,
 
 961 F.2d 405, 411 (3d Cir.1992) (citing
 
 Step-Saver Data Systems, Inc. v. Wyse Technology,
 
 912 F.2d 643, 647 (3d Cir.1990)).
 

 B.
 
 Analysis
 

 While TWA and the Committee argue that each factor in the
 
 Step-Saver
 
 analysis has been met, this court cannot agree. A careful analysis of each factor leads to the conclusion that the request for an order granting mar-shalling is not ripe. There is not a justicia-ble case or controversy.
 

 The first
 
 Step-Saver
 
 factor cited in
 
 Armstrong
 
 that must be considered in order for a declaratory judgment to be appropriate is whether an adversity of interest exists between the parties. In this context a party’s interest is not likely to be adverse where the action is based on a contingency. While it is entirely possible for present harm to result from the possibility of some future action, the possibility of that future event must be “of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.”
 
 Armstrong,
 
 961 F.2d at 412 (quoting
 
 Steffel v. Thompson,
 
 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). Further, the future event must be “certainly impending.”
 
 Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm’n,
 
 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). TWA and the Committee argue that an order granting marshalling is necessary to adjudicate TWA’s present legal obligations under the New Five Year Note documents to resolve the Back Pay Note issue.
 

 The arguments of TWA and the Committee are not persuasive. In order for the rights and obligations of the parties to be determined with respect to a potential event of default on the Five Year Notes, the specific facts concerning the potential default and the proposed marshalling order’s effect upon the holders of the New Five Year Notes must be known. It would be an exercise in futility to conjecture as to the effects of a marshalling order on all interested parties. Further, that potential future Event of Default lacks the necessary immediacy and reality to warrant the issuance of a declaratory judgment because there has been no evidence presented that such an event is “certainly impending.” As to the adjudication of TWA’s present legal obligations under the New Five Year Notes, the issuance of a declaratory judgment would be of little value, since those obligations are provided for in the New Five Year Note Indenture itself.
 

 Further, the speculation that the LAM Settlement will fail and force further negotiations is of no moment. An adequate adversity of interest does not exist where the resolution of Back Pay Note issues is contingent upon the issuance of an impermissible declaratory judgment.
 

 The second
 
 Step-Saver
 
 factor requires that “[a]ny contest must be based on a ‘real and substantial controversy admitting to specific relief through a decree of a conclusive character, as distinguished from an opin
 
 *95
 
 ion advising what the law would be upon a hypothetical state of facts.’”
 
 Step-Saver,
 
 912 F.2d at 649 (quoting
 
 Aetna Life Ins. Co. v. Haworth,
 
 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). Further, the granting of a declaratory judgment on the basis of a hypothetical state of facts and then applying it to actual situations would be an “exercise in futility” because of the contingent nature of the declaratory judgment. Therefore, in determining the conclusivity a declaratory judgment would have upon the legal relationship between the parties, the fact that the order would apply only if certain events and conditions arise, eventualities which may never happen, weighs in favor of finding the issue non-justiciable. Advising what the law would be under a hypothetical set of facts would not permit for the conclusive character necessary to granting specific relief when a real and substantial controversy is at issue.
 

 TWA and the Committee argue, however, that the issue presented here is predominantly legal, and that judicial review will not benefit from further factual development; therefore the declaratory judgment will tend to be more conclusive. A further argument is that postponement of judicial review would impose economic hardship, thereby causing the controversy to be “real” and “substantive,” warranting declaratory relief.
 

 While the factors cited by TWA and the Committee are appropriate to consider when determining whether the second prong of the
 
 Step-Saver
 
 analysis has been met.
 
 Armstrong,
 
 961 F.2d at 423, the presence of a purely legal issue alone will not render that issue ripe for judicial review.
 
 Id.
 
 (citing
 
 Office of Communication of United Church of Christ v. FCC,
 
 826 F.2d 101, 105 (D.C.Cir.1987)). While TWA and the Committee have crafted their argument in such a way as to make the issue seem predominantly legal in nature, the inextricable truth is that the inquiry into whether marshalling would be appropriate is primarily a fact based determination. In order to make such a determination, the court would have to consider any number of factors which, at this time, are impossible to know; including how such an event would affect the rights of the parties. Since it is not possible for this court to know or divine this information at this time, it is likewise impossible to know how these factors would weigh in the determination of whether marshalling would be appropriate. Therefore, due to the contingent nature of such an order, a declaratory judgment would be inappropriate at this time.
 

 Further, the argument that postponement of judicial review would impose hardship on numerous parties is not persuasive. While it has been represented that this court’s refusal to grant the marshalling order will cause the IAM to reject the Settlement Agreement, this court will not allow itself to become an instrument used toward those ends where doing so is beyond this court’s jurisdiction. The economic hardship which TWA and the Committee claim would exist, simply does not rise to the levels necessary when compared to cases where an actual “case” or “controversy” has been found to exist on that basis. For example,
 
 Pacific Gas & Electric Co. v. Energy Resources Conservation & Dev. Comm’n,
 
 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) involved a Supremacy Clause challenge to a state law which imposed a moratorium on the certification of nuclear facilities until certain waste disposal technology came into existence. The court found the challenge ripe because allowing industry to proceed with the building of new nuclear facilities without knowing the validity of the moratorium would impose palpable and considerable hardship on the utilities. However, provisions of the statute governing
 
 interim
 
 waste storage were not found ripe for judicial review because the fact specific contingencies necessary for proper application of the law had not yet occurred.
 
 See also, Lake Carriers Ass’n v. MacMullan,
 
 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (Commerce Clause and Supremacy Clause challenges to state law requiring installation of sewage storage devices found ripe because statute created obligation to install the devices under threat of enforcement even though no enforcement action had yet been taken.).
 

 The last prong of the
 
 Step-Saver
 
 analysis requires that the court consider whether a declaratory judgment would be of
 
 *96
 
 “practical help, or utility.”
 
 Step-Saver,
 
 912 F.2d at 647. This factor requires that “a case should not be considered justiciable unless ‘the court is convinced that ... a useful purpose "will be served [by its action].’”
 
 Step-Saver,
 
 912 F.2d at 649 (quoting E. Borehard,
 
 Declaratory Judgments
 
 29 (1941)). The issuance of the declaratory judgment must do more than define the rights of the parties, but instead, must actually affect the plans of action of the parties. Here, while the court is convinced that the granting of a declaratory judgment would certainly affect the actions of the parties, it is equally clear that not granting the declaratory judgment will also affect the plans of the parties. The fact that the granting or denial of a motion will cause a party to act is not dispositive of the issue; and will not, by itself, cause an issue to be ripe. If it were enough, every issue would necessarily be considered ripe, because a ruling either way would always have some effect on the actions of the parties. Further, this court is not convinced that the issuance of a declaratory judgment would be useful in this case. Based upon the contingent nature such an order would have, the likelihood of future litigation over the parties’ rights is almost a certainty. Needless to say, such a contingent order would lack the degree of certainty necessary to allow an action to be considered ripe for adjudication.
 

 III.
 
 Conclusion
 

 TWA and the Committee have demonstrated neither a manifest error of law or fact, nor have they introduced any newly discovered evidence which would have impacted upon this court’s decision. These reasons alone provide ample grounds to deny TWA and the Committee’s motion for reconsideration.
 
 See, United Merchants and Manufacturers, Inc., et al.,
 
 1992 WL 37498 (Bankr.D.Del. Feb. 18, 1992). Further, an application of the
 
 Step-Saver
 
 analysis is convincing that, under the facts here, judicial review of the marshalling issue would be premature. Therefore, this court holds that the marshall-ing issue is not ripe for judicial review.
 

 An order in accordance with this Memorandum Opinion is attached.