**Jose VELEZ–DUENAS, Plaintiff,**

**v.**

**Linda SWACINA, et al., Defendants.**

Case No. 11–22118–CIV.

United States District Court,
S.D. Florida.

June 28, 2012.

Eduardo Rigoberto Soto, Eduardo Soto, Coral Gables, FL, for Plaintiff.

Craig Defoe, U.S. Department of Justice, Washington, DC, Milton Aponte, United States Attorney's Office, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (D.E. 10)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendants Linda Swacina, Eric Holder, and Janet Napolitano's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint For Failure to State a Claim Upon Which the Court Can Grant the Relief Requested ("Motion," D.E. 10), filed

on October 22, 2011. Plaintiff Jose Velez–Duenas ("Velez") filed his Response to the Motion ("Response," D.E. 11) on November 10, 2011, to which Defendants filed their Reply on November 16, 2011 ("Reply," D.E. 12). Upon review of the Motion, Response, Reply and the record, the Court finds as follows.

## I. Background [1]

This is an immigration case involving review of the United States Citizenship and Immigration Services' ("USCIS") decision to deny an I–130 immigrant visa petition filed by a United States citizen on behalf of his father, who is not a United States citizen.

On November 18, 2005, Plaintiff Velez, a non-United States citizen, married Sobeida Martinez ("Martinez"), a United States citizen. (Compl. Ex. B (USCIS Notice of Intent to Deny Visa Petition), at 1.) On November 29, 2005, Martinez filed an I–130 immigrant visa petition on behalf of Velez.[2] (*Id.*) On June 13, 2007,[3] Velez and Martinez appeared at the USCIS Miami Field Office for an interview regarding the I–130 visa petition. (*Id.*) An examining officer placed Velez and Martinez under oath and asked them about their domestic life and shared experiences. (*Id.*) The examiner noted "[n]umerous, significant discrepancies" in the testimony of Velez and Martinez. (*Id.*) The examining officer confronted Martinez with these discrepancies,

---

1. The following facts are gleaned from Plaintiff's Complaint and the exhibits attached to Plaintiff's Complaint, and are deemed to be true for purposes of Defendants' Motion.

2. On that same date, November 29, 2005, Velez filed a Form I–485, Application to Register Permanent Residence of Adjust Status, on his on behalf. (Compl. Ex. B (USCIS Notice of Intent to Deny Visa Petition), at 1.)

3. Plaintiff's Complaint and the exhibits to Plaintiff's Complaint state that this interview

occurred on June 13, 2006. In their Motion, Defendants assert that this date is erroneous and that "[a]dministrative records not attached to the complaint confirm that June 13, 2007 is the correct date for the interview." (Motion 2 n.2.) In his Response, Plaintiff agrees that the correct date for the interview is June 13, 2007. (*See* Response 2.) The date of the interview is not relevant to the Court's determination of the issues in this case.

at which point Martinez admitted that she married Velez for the "sole purpose of evading the immigration laws." (*Id.*; *see also* Compl. at 3.) Martinez then signed a sworn statement in which she requested that the I–130 immigrant visa petition that she filed on behalf of Velez be withdrawn. (Compl. Ex. B (USCIS Notice of Intent to Deny Visa Petition), at 1.) In that sworn statement, Martinez explained that she married Velez because he offered her five thousand dollars, she had already been paid $2,500, and she would receive the remaining $2,500 after Velez received his permanent resident card. (*Id.*) The examining officer also noted that Martinez admitted that Velez was still living with Sarita Jaramillo ("Jaramillo"), who is Velez's former wife. (*Id.*)

Velez has two children with Jaramillo, named Roberto Jose Velez Jaramillo ("Roberto") and Maria Jose Gabbai ("Maria"). (Compl. Ex. C (Roberto Aff.), at 1; Compl. Ex. D (Maria Aff.), at 1.) Roberto became a United States citizen in 2007; Maria became a United States citizen in 2008. (Compl. Ex. C (Roberto Aff.), at 2; Compl. Ex. D (Maria Aff.), at 2.) On December 28, 2007, Roberto filed an I–130 immigrant visa petition on behalf of his father, Velez. (Compl. Ex. B (USCIS Notice of Intent to Deny Visa Petition), at 1.)

On August 21, 2009, USCIS sent Roberto a Notice of Intent to Deny Visa Petition ("NOID"), in which USCIS stated its intent to deny Roberto's petition under Section 204(c) of the Immigration and Nationality Act ("INA"). (*Id.* at 1–2.) In the NOID, USCIS set forth Section 204(c) of the INA, and explained that visa petitions cannot be approved if the alien has previously sought to obtain an immigration benefit based on a fraudulent marriage. (*Id.* at 2.) USCIS found that "[t]he record establishes that the marriage entered into between Sobeida Martinez and [Velez] was

for the sole purpose of conveying immigration benefits to the beneficiary." (*Id.*) In support of this conclusion, USCIS detailed the examining officer's findings from the June 13, 2007 interview of Velez and Martinez, and noted that the only evidence in the record that the marriage was bona fide was a handwritten rental lease and a life insurance policy in which Velez listed Martinez as the beneficiary. (*Id.* at 1.) With regard to these two documents, USCIS stated:

> The type of evidence submitted with the visa petition is of the type that USCIS often finds submitted in support of the bona fides of sham marriages. A blank lease agreement, like the one submitted, can be easily obtained at any office supply store. Furthermore, a life insurance policy can be oped by simply completing and submitting forms to the appropriate insurance office. This type of documentary evidence is easily created and gives absolutely no insight into the nature of a claimed relationship, the level of emotional involvement, or the day-to-day activities of such relationship.

(*Id.* at 1–2.) USCIS concluded that "Sobeida Martinez's signed withdrawal statement constitutes sufficient substantial and probative evidence to support a finding that [Velez] falls within the purview of Section 204(c) of the Act." (*Id.* at 2.) USCIS provided Roberto thirty days to respond to the NOID. (*Id.*)

In response to the NOID, Roberto submitted his own affidavit and the affidavit of his sister, Maria. (*See* Compl. Ex. C (Roberto Aff.), at 2; Compl. Ex. D (Maria Aff.), at 2.) Both Roberto and Maria swore that Velez's marriage to Martinez was bona fide. (Compl. Ex. C (Roberto Aff.), at 2; Compl. Ex. D (Maria Aff.), at 2.) Roberto stated that he met Martinez "several times before they married and many times after they married," and that after

they were married, Roberto spoke with Velez "numerous times to discuss the relationship between him and Sobeida" and Velez would tell Roberto "what they were doing for fun, etc." (Compl. Ex. C (Roberto Aff.), at 2.) Maria stated that she saw her father "about once a month" during the fourteen months Velez lived with Martinez. (Compl. Ex. D (Maria Aff.), at 2.) Maria further stated that when she saw her father on the weekends, he would be with Martinez, but when she saw him during the week, he would be alone. (*Id.*) Both Roberto and Maria stated that Velez had no motivation to try to obtain a green card based on a fraudulent marriage because "either one of us was soon going to be eligible to file a petition" for him. (Compl. Ex. C (Roberto Aff.), at 2; Compl. Ex. D (Maria Aff.), at 2.) The USCIS Field Officer Director denied Roberto's visa petition on September 29, 2009.[4]

Roberto appealed the USCIS decision, and on March 18, 2011, the Bureau of Immigration Appeals ("BIA") affirmed the denial of the petition. (Compl. Ex. A (Decision of the BIA), at 1.) The BIA found that "the record supports a finding that [Velez's] prior marriage was entered into for the purpose of evading the immigration laws." (*Id.*) In support of its decision, the BIA reviewed the Field Office Director's September 29, 2009 decision denying the petition, the NOID, Roberto's response to the NOID, and Roberto's contentions on appeal, and summarized Martinez's sworn statement admitting that the marriage was fraudulent. (*Id.*) The BIA concluded that "section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c), applies to the instant case and serves to bar the approval of the petition filed by the petitioner on the beneficiary's behalf." (*Id.*)

On June 13, 2011, Velez filed the Complaint in this case, wherein he challenges USCIS's decision to deny Roberto's I–130 visa petition filed on behalf of Velez. Velez asserts the Court has jurisdiction over the case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (Compl. 1–2.) Velez summarily claims, without further elaboration, that he was "denied due process." (*Id.* at 5.) Velez acknowledges that Martinez told immigrations officials that Velez promised to pay her $5,000 to enter into a marriage for immigrations purposes, but Velez claims that this statement is "not true." (*Id.* at 4.) In support of his Complaint, Velez submitted to the Court his sworn declaration and a declaration of Jose Oquendo, his former landlord, both of which are dated May 26, 2011. (*See id.* Ex. D (Oquendo Decl.); Ex. E (Velez Decl.).) Velez requests that the Court order Defendants to "reopen his case." (*Id.* at 5.)

Defendants filed their Motion to Dismiss on October 22, 2011. Defendants argue that "[t]he only valid jurisdictional basis for Velez's claim is the APA, and he fails to state a plausible claim under the APA" because "the allegations in the complaint and the exhibits attached to it conclusively demonstrate that USCIS's I–130 denial, based on its marriage fraud finding, was reasonable, lawful, and neither arbitrary nor capricious." (Motion 6–7.)

In his Response, Velez claims that the Court has jurisdiction over the case under the APA and under the Mandamus Act "because the Petitioner has no other avenue of relief." (Response 5.) Plaintiff asserts that "[t]he issue in this case is

---

4. The Field Office Director's September 29, 2009 decision was not submitted to the Court as an exhibit.

whether Martinez's sworn marriage fraud statement made out of anger and spite carries more weight than Petitioner Jose Velez's [s]worn statement." (*Id.* at 6.) Plaintiff states that Martinez told the immigrations officials that she and Velez were married for immigrations purposes because "she and her husband were not getting along and she had a means of getting even with him." (*Id.* at 5.) Plaintiff states that he "should be allowed to confront this witness." (*Id.*)

In their Reply, Defendants assert that they "do not dispute that subject matter jurisdiction, under the APA and 28 U.S.C. § 1331, exists for this Court to consider Velez's challenge to USCIS's denial of his I–130 visa petition." (Reply 2.) Defendants argue that "Velez offers no plausible basis for this Court to determine, under the exceedingly deferential APA standard of review, that USCIS's reliance on Martinez's sworn statement was either arbitrary or capricious." (*Id.* at 3.)

## II. Legal Standards

 Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Edwards v. Prime, Inc.,* 602 F.3d 1276, 1291 (11th Cir.2010) (setting forth the plausibility standard). In recent decisions, the Eleventh Circuit further advised that courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw plaintiff's inference. *Sinaltrainal v. Coca–Cola,* 578 F.3d 1252, 1260 (11th Cir.2009) (quotations omitted).

## III. Discussion

 The Court has jurisdiction over the case pursuant to the APA, 5 U.S.C. § 701 *et seq.,* in conjunction with the federal-question jurisdiction statute, 28 U.S.C. § 1331.[5] *See Chrysler Corp. v. Brown,* 441

5. Although Plaintiff argues otherwise, the Mandamus Act, which provides the district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, does not provide the Court jurisdiction in this case. Mandamus is an "extraordinary remedy," and "petitioners must show that they lack adequate alternative means to obtain the relief they seek." *Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa,* 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Mandamus relief is unavailable here because Velez can, and has in his Complaint, availed himself of the APA as the jurisdictional basis to challenge the USCIS determination. Even if mandamus relief was available, the Ninth Circuit Court of Appeals has noted that "the Supreme Court has construed a claim seeking mandamus under [28 U.S.C. § 1361], in essence, as one for relief under § 706 of the APA." *Independence Min. Co. v. Babbitt,* 105 F.3d 502, 507 (9th Cir.1997) (citing *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986)). Accordingly, the Court's analysis under the Mandamus Act would not differ from the Court's analysis under the APA.

Furthermore, Plaintiff appears to claim that the Court has jurisdiction over the case pursuant to the Declaratory Judgment Act. (*See* Compl. 1–2.) However, the Declaratory Judgment Act does not confer jurisdiction upon the federal courts, and "a suit brought

U.S. 281, 317 n. 47, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) ("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331." (citation omitted)). Under the APA, the Court reviews agency decisions to determine if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "That standard 'provides the reviewing court with very limited discretion to reverse an agency decision,' and is 'exceedingly deferential.'" *Mathews v. USCIS*, 458 Fed.Appx. 831, 833 (11th Cir.2012) (unpublished) (quoting *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir.2009); *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir.1996)). Under this standard, "[a]lthough a court may not 'supply a reasoned basis for the agency's action that the agency itself has not given,' it must 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Rivera v. Patterson*, 2011 WL 5525356, at *3 (S.D.Fla. Nov. 14, 2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

Upon review of the Complaint and the exhibits attached to the Complaint, the Court finds that Velez has failed to state a claim under the APA because Velez cannot show that the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS denied Roberto's I–130 visa petition filed on behalf of Velez pursuant to Section 204(c) of the INA, 8 U.S.C. § 1154(c), based on Martinez's sworn statement that her marriage with Velez was fraudulent. Section 204(c) of the INA states as follows:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).[6] In other words, the statute requires USCIS to deny an I–130

---

under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir.1989) (citing *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)).

**6.** Federal regulations describe Section 204(c) of the INA as follows:

Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of

evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file. 8 C.F.R. § 204.2(a)(1)(ii).

visa petition filed by a United States citizen on behalf of an alien if the USCIS determines that the alien has previously entered into a fraudulent marriage in order to evade immigration laws. *See id.*; *see also Eberheart v. U.S. Atty. Gen.*, 322 Fed.Appx. 827, 830 (11th Cir.2009) (unpublished); *Rivera*, 2011 WL 5525356, at *3 (stating "an agency must deny a subsequent I–130 petition on behalf of an alien who previously attempted or conspired to enter into a marriage for the purpose of evading the immigration laws" (quoting *Matter of Laureano*, 19 I. & N. Dec. 1, 2 (1983)) (citing 8 U.S.C. § 1154(c); *Matter of Kahy*, 19 I. & N. Dec. 803, 805 n. 2 (1988))). In an I–130 visa petition proceeding before the agency, the petitioner must show by a preponderance of the evidence that the beneficiary is eligible for the benefits sought. *Laureano*, 19 I. & N. Dec. at 3 (citing *Matter of Brantigan*, 11 I. & N. Dec. 493 (1966)). "Where there is reason to doubt the validity of the marital relationship, the petitioner must present evidence to show that the marriage was not entered into for the purpose of evading the immigration laws." *Rivera*, 2011 WL 5525356, at *3 (quoting *Laureano*, 19 I. & N. Dec. at 3); *see also Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (1990).

The record before the agency shows that Velez married Martinez on November 18, 2005, and eleven days later, Martinez filed an I–130 visa petition on behalf of Velez. The NOID provides a detailed description of the USCIS examining officer's June 13, 2007 interview of Velez and Martinez, during which the examiner noted "[n]umerous, significant discrepancies" in the testimony of Velez and Martinez. The examiner confronted Martinez about these discrepancies, and she admitted, in a sworn statement, that her marriage was a sham, that she married Velez so he could obtain permanent residence in the United States in exchange for $5,000, that she had already received $2,500 from Velez, and that she was supposed to be paid the remaining $2,500 when Velez received a permanent resident card. Martinez then withdrew the I–130 visa petition. The BIA reviewed the Field Office Director's September 29, 2009 decision denying the petition, the NOID, Roberto's response to the NOID, and Roberto's contentions on appeal, and stated:

> A visa petition filed by Sobeida Martinez in November 2005 was denied after Ms. Martinez, in a sworn statement, withdrew the petition, stating that she agreed to marry the beneficiary for $5000. On appeal, the petitioner essentially argues that marital problems motivated Ms. Martinez to allege that the marriage was not bona fide, and that the Field Office Director should have conducted a more in-depth "interview of all parties" before denying the visa petition filed by the petitioner. However, the evidence of record speaks for itself and support the decision to deny the instant petition.

(Compl. Ex. A (BIA decision), at 1.) The BIA concluded that "section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c), applies to the instant case and serves to bar the approval of the petition filed by the petitioner on the beneficiary's behalf." (*Id.*)

From this record, and under the "exceedingly deferential" standard of review applicable to this case, *Mathews*, 458 Fed. Appx. at 833, the Court finds that USCIS did not act in an arbitrary or capricious manner in denying Roberto's I–130 visa petition filed on behalf of Velez. As set forth above, the administrative record shows that USCIS stated the applicable statute, considered the documents that Roberto submitted in support of the I–130 visa petition, and explained that it based its decision to deny the I–130 visa petition

on Martinez's sworn admission that her marriage to Velez was fraudulent. Velez now asks this Court to consider documents that were not a part of the administrative record, including his own declaration that the marriage was not fraudulent; however, it would be improper for the Court to consider evidence from outside the administrative record. *See Camp*, 411 U.S. at 142, 93 S.Ct. 1241. Accordingly, because the agency action was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the Court finds that Velez has failed to state a claim upon which relief can be granted.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss (D.E. 10), filed on October 22, 2011, is **GRANTED;**

2. Plaintiff Jose Velez–Duenas' Complaint (D.E. 1), filed on June 13, 2011, is **DISMISSED;**

3. All pending motions are **DENIED AS MOOT;** and

4. This case is now **CLOSED.**