**STERLING NATIONAL BANK & TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**TELTRONICS SERVICES, INC. and the United States of America, Defendants.**

No. 79 Civ. 1831 (JMC).

United States District Court, S. D. New York.

May 7, 1979.

David J. Minder and Jerrold Gilbert, New York City, for plaintiff.

Baratta & Goldstein, New York City by Howard J. Goldstein, New York City, for defendant Teltronics, Inc.

Robert B. Fiske, Jr., U. S. Atty., for S. D. New York, New York City by Leona Sharpe, Asst. U. S. Atty., for defendant United States of America.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Upon the motion of the Court, this complaint is dismissed for want of subject matter jurisdiction.

By order to show cause, plaintiff commenced a proceeding seeking a preliminary injunction against the United States and the defendant Teltronics, Inc. ["Teltronics"]. The Court conducted a hearing on this application on April 20, 1979. On its own motion, the Court raised the issue of subject matter jurisdiction, and agreed to allow the parties time to brief the issue. The Court now makes the following findings of fact and conclusions of law.

## FACTS

On July 19, 1976, plaintiff Sterling National Bank and Trust Company ["Sterling"], a national banking association with its principal place of business in New York, established a line of credit for the defendant Teltronics, a New York corporation. As collateral for the repayment of all loans pursuant to that credit, Teltronics assigned to Sterling all of its then existing or thereafter acquired accounts receivable on sales of merchandise and services.

In early March 1979, Sterling became concerned about Teltronics' ability to repay, and began to take steps to protect its interests. On March 8, Sterling made demand upon Teltronics for outstanding loans, and immediately set off the balances of accounts Teltronics had maintained at Sterling. After the setoff, the total amount owing was approximately $700,000. On March 9, Sterling advised Teltronics to forward to it all receipts on the assigned receivables.

Upon a review of the schedule of assigned receivables, Sterling learned that one of the accounts, listed as "Floyd Bennett Field," represented contract number GS–02S–29880 with the General Services Administration ["GSA"], an agency of the United States. The amount owing on this account was listed as approximately $300,000. Sterling thereupon forwarded to GSA four "Notices of Assignment" and a photocopy of the instrument of assignment, in an attempt to comply with GSA regulations relating to assignments of claims under Government contracts.[1] On March 22, GSA

---

1. [I]n the event of any assignment, the assignee shall file written notice of the assignment, together with a true copy of the instrument of assignment with (1) the contracting officer or the head of his department or agency; (2) the surety or sureties upon the bond or bonds, if any, in connection with the assigned contract; and (3) the disbursing officer, if any, designated in the assigned contract to make payment.

41 C.F.R. § 1–30.702(e). Section 1–30.704 suggests a form for the notice of assignment. Section 1–30.705 provides:

The assignee should address a notice of assignment to each of the parties specified in § 1–30.702(e) and file with each party four signed copies of the notice, together with one true copy of the instrument of assignment (a certified true duplicate or a photostatic copy of the original). If a disbursing officer is not designated in the contract to make payment, it is not necessary that the notice be filed

with any agency or department official other than the contracting officer or the head of his department or agency.

Section 1–30.708(d) provides:

The assignment shall cover only claims for moneys due or to become due under the contract involved. It must not cover any of the obligations or duties of the contractor under the contract. The contracting officer shall be sure that the copy of the instrument of assignment which is submitted to him is a duplicate of the original instrument, or has been certified as a true copy, acknowledged as such before a notary public or other officer authorized by law to administer oaths. Care shall also be taken to ascertain that the assignment has been properly executed.

(1) Assignments by corporations should be executed by an authorized representative, attested by the secretary or assistant secretary of the corporation, with the seal of the corpo-

informed Sterling that it would not approve the assignment, for three reasons: (1) the instrument of assignment did not refer to a specific contract number; (2) Teltronics corporate seal was not affixed to the instrument; and (3) the assignment antedated the contract, which was dated May 1, 1978.

By letter dated April 3, 1979, Sterling responded, insisting upon the validity of the assignment and resubmitting the instrument and four copies of the notice. By letter dated April 4, GSA reiterated its position that Sterling had not complied with Government requirements. On April 6, Sterling forwarded additional documentation, the Government indicated that it would not change its position, and Sterling commenced the instant action against Teltronics and the United States seeking injunctive relief. Specifically, Sterling asks this Court to enjoin the Government from paying any monies to Teltronics under GSA contract number GS–02S–29880, and to enjoin Teltronics from demanding or receiving such payments. Furthermore, Sterling seeks an order directing Teltronics

> to execute and to deliver to plaintiff immediately all documents necessary in order for plaintiff to obtain payment directly from the United States of America all sums due to Teltronics Services, Inc. on account of aforesaid contract.

## DISCUSSION

Sterling attempts to base jurisdiction over the Government on the Assignment of Claims Act,[2] the Declaratory Judgments Act,[3] chapter 7 of the Administrative Procedure Act,[4] and 28 U.S.C. § 1331(a).[5] As to the defendant Teltronics, Sterling concedes that the only possible jurisdictional basis is the doctrine of pendent jurisdiction.[6]

 No independent basis of jurisdiction is provided by either the Declaratory Judgments Act, see *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), or the Administrative Procedure Act ["APA"], see *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 780, 51 L.Ed.2d 192 (1977). Nor does the Assignment of Claims Act contain a grant of jurisdiction, whether express or implied. Thus the only possible basis for jurisdiction is general federal question jurisdiction under 28 U.S.C. § 1331.

---

ration impressed upon the assignments or in lieu of such seal, accompanied by a certified copy of a resolution of the corporation board of directors authorizing the representative involved to execute the assignment.

 • • • • •

**2.** The Assignment of Claims Act is codified at 31 U.S.C. § 203 and 41 U.S.C. § 15. The two sections are substantially the same. Section 15 of Title 41 provides in pertinent part:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.
> The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided,* . . . [t]hat in the event of any such assignment, the assign-

ee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment.

As applies to the instant case, the effect of section 203 of Title 31 is identical.

**3.** 28 U.S.C. § 2201.

**4.** 5 U.S.C. §§ 701–706.

**5.** The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

28 U.S.C. § 1331(a).

**6.** See *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The problem with attempting to base jurisdiction over the Government in this case on section 1331, however, is that the Government asserts the defense of sovereign immunity. Absent a waiver of immunity, a suit against the sovereign "is not maintainable because of the absence of subject matter jurisdiction." *Estate of Watson v. Blumenthal,* 586 F.2d 925, 929 (2d Cir. 1978) (citing *Larson v. Domestic Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). The plaintiff admits that section 1331 is not a waiver of immunity, but argues that since this suit essentially seeks review of agency action,[7] the waiver of sovereign immunity embodied in the 1976 amendments to the Administrative Procedure Act[8] applies. The Second Circuit, however, has very recently rejected precisely this argument.

In *Estate of Watson v. Blumenthal, supra,* an estate and its executrices brought an action in federal district court "against the Secretary of the Treasury and the Commissioner of the Bureau of Public Debt seeking declaratory relief and an order directing the Government to redeem [certain Government bonds known as 'Flower Bonds'] at par and apply them with accrued interest in satisfaction of estate taxes due." 586 F.2d at 928. The Second Circuit held that the action, although for injunctive and declaratory relief, was one "essentially . . . 'founded upon a contract' and hence a matter exclusively for the Court of Claims." *Id.* at 929 (quoting the Tucker Act).[9] The Court did not end there, however, but proceeded to consider the implications of the 1976 amendments to the APA and section 1331,[10] concluding that:

> The law applicable to this case after the amendments thus can be summarized as follows: there is no subject matter jurisdiction under the APA because the Act itself is not a grant of jurisdiction, *Califano v. Sanders,* 430 U.S. at 105, 97 S.Ct. 980, and the amendments also do not provide for jurisdiction, but only make it clear that sovereign immunity will not be a defense in actions in which jurisdiction does exist; there is also no jurisdiction under § 1331 because of sovereign immunity, a defense that the amendments did not affect. Just as prior to the amendments to § 1331 the absence of a jurisdictional amount under the APA did not negate the requirement of a minimum amount in controversy in actions under § 1331, now the waiver of sovereign immunity under the APA does not affect the limitation of the sovereign immunity defense on jurisdiction under § 1331.

> Alternatively, we note that whatever the effect on the defense of sovereign immunity under § 1331, the amendments did not affect the further limitation on § 1331 jurisdiction imposed by the Tucker Act's grant to the Court of Claims of exclusive jurisdiction in cases founded

7. Plaintiff does not dispute that § 1331 is not a general waiver of sovereign immunity but rather submits that the law under which plaintiff asserts its claim—in this case the APA—does provide for waiver of sovereign immunity.

Plaintiff's Memorandum at 4 (filed April 27, 1979).

8. Pub.L. No. 94–574, 90 Stat. 2721 (1976) (removing the defense of sovereign immunity in actions under the Administrative Procedure Act).

9. The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliqui-

dated damages in cases not sounding in tort. . . . In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491.

For claims not exceeding $10,000, the Tucker Act gives federal district courts concurrent jurisdiction. 28 U.S.C. § 1346(a)(2). In the instant case, the underlying contract claim is for approximately $300,000, well in excess of the district court's jurisdictional limit.

10. The 1976 Act that amended the Administrative Procedure Act also amended 28 U.S.C. § 1331 to eliminate the $10,000 jurisdictional amount requirement for suits against the United States. Pub.L. No. 94–574, § 2, 90 Stat. 2721 (1976).

upon contracts, including those that involve federal laws or regulations.

*Id.* at 932. This Court cannot improve on the clarity of these words, and their applicability to the instant case does not require paraphrasing. That Sterling's complaint, though characterized as seeking an injunction, is "essentially founded upon a contract" is underscored by the opening statement of Sterling's counsel at the hearing on the motion for a preliminary injunction:

> The sole purpose in bringing this action and the preliminary injunction is to obtain directly from the United States moneys due on the contract entered into between GSA and Teltronics, which moneys were assigned by Teltronics to Sterling National Bank as collateral security for certain loans and other financial accommodations.

Transcript of Proceedings at 5 (April 20, 1979). Since the underlying contract claim is for approximately $300,000, this Court lacks Tucker Act jurisdiction.

## CONCLUSION

For the foregoing reasons, the claims against the Government are dismissed. The state law claims against Teltronics, allegedly pendent, are dismissed as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, the Clerk of the Court is directed to enter a Judgment dismissing the complaint in its entirety for lack of subject matter jurisdiction.

SO ORDERED.