WYNN, Circuit Judge,
concurring:
I agree with the majority opinion that the proper result in this case is to vacate the district court’s order granting a preliminary injunction in favor of Bristol University (“Bristol”) and against the Accrediting Council for Independent Colleges and Schools (the “Accrediting Council”). But my reason for vacating the district court’s order is based on mootness. The district court granted the preliminary injunction on grounds that Bristol was likely to succeed on the merits of its claim that the Accrediting Council breached its federal common law due process-like duty to Bristol in deciding to withdraw Bristol’s accreditation. But following the district court’s grant of the preliminary injunction, the Accrediting Council lost its federal recognition as an accrediting agency. The Accrediting Council’s loss of recognition deprives federal courts of any basis to afford Bristol relief based on the two causes of action asserted in the complaint, both of which rest on federal law governing federally recognized accrediting agencies. Thus, this case is moot, requiring us to vacate the injunction and stay entered by the district court and to remand with instructions that the case be dismissed without prejudice.
I.
The Accrediting Council, a not-for-profit accrediting organization, first accredited Bristol in 1993. In 2012, the Accrediting Council renewed Bristol’s accreditation for a three-year period, running through December 31, 2015. At the time of the renewal, the Department of Education recognized the Accrediting Council as a national accrediting agency, thereby allowing attendees of institutions accredited by the Accrediting Council— like Bristol — to participate in federal student aid programs. In the fall of 2014, Bristol applied to the Accrediting Council for renewal of its accreditation. In the course of its accreditation review, the Accrediting Council identified numerous deficiencies in Bristol’s operations. After Bristol was unable to remedy all of the identified deficiencies, the Accrediting Council denied Bristol’s application for renewal and withdrew Bristol’s accreditation.
*745 Bristol’s complaint alleges that, in withdrawing Bristol’s accreditation, the Accrediting Council failed to comply with its own procedures and policies, as well as with procedures and policies for federally recognized accrediting agencies set forth in the Higher Education Act, 20 U.S.C. § 1099b, and 34 C.F.R. §§ 602.16, 602.25. To that end, Bristol’s complaint asserted two causes of action.[1] First, Bristol alleged that the Accrediting Council, in denying Bristol’s application for renewed accreditation, failed to comply with the due process-like duty imposed on recognized accrediting agencies, in violation of federal common law. See Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls., 781 F.3d 161, 169 (4th Cir. 2015). Second, Bristol alleged that the Accrediting Council was negligent per se in denying Bristol’s application for renewed accreditation, in violation of certain provisions of the Higher Education Act, 20 U.S.C. § 1099b, and its implementing regulations. The district court granted the preliminary injunction and stay based on Bristol’s federal common law claim.
After the Accrediting Council filed its appeal of the district court’s order, the Department of Education terminated its recognition of the Accrediting Council as a national accrediting agency. Although the Accrediting Council appealed the Department of Education’s decision, the Department of Education denied that appeal. The Accrediting Council is challenging the Department of Education’s decision in court, Accrediting Council for Indep. Colls. & Sch. v. U.S. Dep’t of Educ., No. 1:16-cv-02448-RBW (D.D.C.), but, as it stands, the Accrediting Council is not a recognized accrediting agency for purposes of the Higher Education Act. The Accrediting Council’s loss of federal recognition calls into question the justiciability of Bristol’s claims.
II.
“Mootness has been described as the doctrine of standing set in a time frame.” Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks omitted). Accordingly, a case can become moot due either to a change in facts or a change in law that undercuts a plaintiffs basis for asserting standing. See Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011). “[T]o satisfy Article Ill’s standing requirements, a plaintiff must show (1) it has suffered an ‘injury in fact’ ...; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Due to the Accrediting *746 Council’s loss of federal recognition, neither of Bristol’s two causes of action provide a basis to redress- Bristol’s alleged injury. As a result, Bristol lacks standing to continue pursuing its claims against the Accrediting Council, and the present action is thus moot.
The district court awarded Bristol preliminary injunctive relief based on the Accrediting Council’s alleged violation of the federal “common law duty on the part of quasi-public private ... accreditation associations to employ fair procedures when making decisions affecting their members.” Prof'l Massage, 781 F.3d at 169 (internal quotation marks omitted). This Court first recognized such a duty in Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools & Colleges, 781 F.3d 161 (4th Cir. 2015). This common law “duty was meant to operate as a ‘check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.’ ” Id. at 170 (quoting Thomas M. Cooley Law Sch. v. Am. Bar Ass’n, 459 F.3d 705, 712 (6th Cir. 2006)). In recognizing the common law duty, we emphasized that,.though they serve important public functions, “[accreditation agencies are private entities, not state actors, and as such are not subject to the strictures of constitutional due process requirements.” Id. at 169 (emphasis added).
Nonetheless, we identified several reasons for imposing a common law due process-like duty on federally recognized accrediting agencies. Id. at 170. First, in the Higher Education Act, Congress “delegated to accreditation agencies a decision-making power that affects student access to federal education funding.” Id. In particular, accreditation by a recognized accrediting agency is required for institutions of higher education to access federal student aid funding. See 20 U.S.C. § 1002(a), (b)(1)(D) (defining an “institution of higher education” as, in part, an institution “accredited by a nationally recognized accrediting agency or association”); id. § 1070a(a)(1) (requiring students who receive federal Pell grants to be “in attendance at an institution of higher education”); id. § 1087aa(b) (allowing “an institution of higher education” to make federal Perkins loans to eligible students); see also Prof'l Massage, 781 F.3d at 170 (“Accreditation ... is a prerequisite to Title IV funding and it provides assurance that the federal loans and .grants are awarded to students who will get the education for which they are paying.”). As a result, “accreditation agencies ... serve an important quasi-public role in the dispersal of federal student aid funding.” Prof'l Massage, 781 F.3d at 171. Namely, the Department of Education “rel[ies] on a number of select nationally recognized accrediting agencies that the Secretary of Education deems to be ‘reliable authorities] regarding the quality of the education or training provided by’ schools” to ensure that the institutions that receive federal student aid funding are educating their students appropriately. Id. (second alteration in original).
A second “underpinning” of our recognition of this federal common law duty is “the fact that Congress has given exclusive jurisdiction to United States district courts over” certain disputes between institutions of higher education and nationally recognized accrediting agencies. Id. at 170. In particular, the Higher Education Act provides that “any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary ,.. and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.” 20 U.S.C. *747 § 1099b(f). Congress’s decision to vest exclusive jurisdiction in federal courts over this class of disputes “necessarily implies the application of federal law” and supports the imposition of a federal common law due process-like duty on recognized accrediting agencies. Prof'l Massage, 781 F.3d at 170 (internal quotation marks omitted) (quoting Chi. Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Sch. & Colls., 44 F.3d 447, 449 (7th Cir. 1994)).
In sum, the common law duty under which Bristol sought and obtained relief has as its foundation the unique role occupied by recognized accrediting agencies by virtue of their status as government-approved authorities on the quality of educational institutions and gatekeepers for federal education funding. Id. at 169-70. And Congress’s desire for federal law to govern alleged violations of this duty is further confirmed by language in the Higher Education Act providing that such agencies will be subject to federal jurisdiction in civil actions brought by institutions that have or seek those agencies’ accreditation. Id. at 170.
In this ease, however, the Department of Education’s decision to terminate its recognition of the Accrediting Council as a national accrediting agency removed the essential legal predicates underlying Bristol’s federal claims against the Accrediting Council. See id. In particular, the Accrediting Council no longer has the power, delegated by Congress through the Higher Education Act, to make decisions “affecting] student access to federal education funding,” eliminating the first “underpinning” of the common law duty. Id. Only accreditation by a “nationally recognized accrediting agency or association” renders an entity an “institution of higher education,” 20 U.S.C. § 1002(a), (b)(1)(D) (emphasis added), eligible to receive federal student aid funding, id. §§ 1070a(a)(1), 1087aa(b). Because the Accrediting Council is no longer a “nationally recognized accrediting agency,” it no longer “serve[s] an important quasi-public role in the dispersal of federal student aid funding” or “wield[s] ... life and death power” over Bristol based on its status as a gatekeeper to that funding. See Prof'l Massage, 781 F.3d at 170-71.
Nor can the second “underpinning”— Congress’s grant of exclusive federal jurisdiction — provide a basis for our recognition of the federal common law cause of action pleaded in this case. Federal district courts have exclusive jurisdiction over “any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary.” 20 U.S.C. § 1099b(f) (emphasis added). This exclusive jurisdiction does not, by the express terms of the statute, extend to civil actions brought by institutions of higher education that are accredited by or seeking accreditation from agencies — like the Accrediting Council — that are not recognized by the Secretary of Education.
Additionally, in Professional Massage, we .framed the common law duty as applying to “quasi-public private .., accreditation associations.” Prof'l Massage, 781 F.3d at 169 (internal quotation marks omitted). Without the Department of Education’s recognition, the Accrediting Council is no longer a “quasi-public” accreditation association. It no longer qualifies as a “reliable authority regarding the quality of the education or training provided by” colleges and schools, 34 C.F.R. § 602.16(a), and it no longer controls, access to federal education funding. Indeed, due to the absence of any connection to the federal government or its activities, there is no reason to subject the Accrediting Council to the *748 strictures of the due process-like requirements that “quasi-public” federally recognized accrediting agencies must follow and that serve as the basis for Bristol’s requested relief.
Finally, the purpose behind this Court’s recognition of the federal common law duty at issue would not be served by recognizing the cause of action pleaded in this case. “The duty was meant to operate as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.” Prof'l Massage, 781 F.3d at 170 (emphasis added) (internal quotation marks omitted). Without the Department of Education’s recognition, the Accrediting Council cannot exercise any authority over an institution of higher education’s access to federal funds, nor can it exercise the federal government’s delegated authority in a way that “gives the public some assurance that” the schools and programs the Accrediting Council accredits are providing satisfactory education and training. Id. at 171.
Bristol’s negligence per se action— which the district court did not rely upon in imposing the preliminary injunction— likewise only relates to federally recognized accrediting agencies. In particular, Bristol alleged that the Accrediting Council engaged in negligence per se because it did not comply with certain procedural requirements set forth in Section 1099b, and its implementing regulations, in deciding not to renew Bristol’s accreditation. But those statutory requirements apply only to federally recognized accrediting agencies. Accordingly, because the Accrediting Council is no longer federally accredited, Section 1099b and its implementing regulations no longer govern the Accrediting Council’s conduct.
In sum, the Department of Education’s decision to terminate its recognition of the Accrediting Council as a nationally recognized accrediting agency eliminated any basis for relying on federal law to afford Bristol relief. Since Bristol’s complaint seeks relief only under federal law, there is no longer any basis to redress Bristol’s alleged injury. As a result, I would dismiss this case as moot. ■
III.
Because Bristol’s action is moot, I join the majority in vacating the preliminary injunction and stay entered below. I would therefore remand this matter to the district court with instructions to dismiss this suit without prejudice.[2] See United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (“The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.”).

. Bristol also sought declaratory and injunc-tive relief pursuant to 28 U.S.C. §§ 2201 et seq. The majority rightly notes that the Declaratory Judgment Act does not "create[] any substantive rights” or provide a standalone cause of action. CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 55-56 (4th Cir. 2011) (citing Shelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); see also Skelly Oil, 339 U.S. at 671, 70 S.Ct. 876 (explaining that the Declaratory Judgment Act "is procedural only” and "did not extend [federal courts’] jurisdiction” (internal quotation marks omitted)). Accordingly, Bristol's claim under the Declaratory Judgment Act only entitles Bristol to a particular type of relief in the event that either or both of its substantive causes of action succeed on the merits. "Stated differently, '[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.’" CGM, LLC, 664 F.3d at 55-56 (alteration in original) (quoting Int’l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth., 108 F.3d 658, 668 (6th Cir. 1997)).

. I offer no view regarding whether Bristol may base a claim for relief on another cause of action, such as a breach of contract claim under state law, or whether Bristol may refile its federal common law claim in the event that the Department of Education reinstates the Accrediting Council’s recognition. I simply note that there is no cause of action currently before this Court that affords a basis for redressing Bristol’s alleged harm.