[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14383
_____

D.C. Docket No. 8:18-cv-00238-JSM-CPT

FLORIDA HEALTH SCIENCES CENTER, INC.,
d/b/a Tampa General Hospital,

Plaintiff - Appellee,

PATIENT SAFETY ORGANIZATION OF FLORIDA,

Intervenor - Appellee,

versus

SECRETARY, U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 11, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

NEWSOM, Circuit Judge:

This case arises out of an unusual set of circumstances and ultimately turns on Article III's requirement of an "imminent injury." It all started with a surgery patient who sued a hospital for medical malpractice in Florida state court. In the course of that state-court litigation, the patient requested that the hospital disclose certain records. The hospital refused on the ground that disclosure would violate federal law. The state court nonetheless ordered the hospital to disclose the records and eventually sanctioned it for failing to do so. In an attempt to get out of its dilemma, the hospital brought a declaratory-judgment action in federal court against the federal official charged with enforcing the federal law. The hospital requested a declaration that its disclosure would violate the federal law and—counterintuitively—if the disclosure *did* violate the federal law, an injunction preventing the federal official from enforcing the law against it. The district court granted both of the hospital's requested remedies.

In the meantime, the hospital appealed the original state-court contempt order and the state court stayed the sanctions. But while that appeal was pending, the state trial court dismissed the surgery patient's underlying suit against the hospital on the merits, thereby obviating the need for any disclosure. Because the underlying suit was dismissed, the hospital is no longer likely to be required to

2

disclose any records, and whatever injury might once have been "imminent" enough to confer jurisdiction in this case is now too attenuated. Accordingly, we will vacate and dismiss for lack of jurisdiction.

**I**

Lawrence Brawley sued Florida Health Sciences Center—which does business as Tampa General Hospital—after a surgery gone terribly wrong. Brawley requested Tampa General's internal records related to a wide range of adverse medical incidents. Tampa General refused to disclose some of the requested records because, in its view, doing so would violate the federal Patient Safety Act.

The Patient Safety Act forbids participating entities, including Tampa General, from disclosing certain records that qualify as "patient safety work product." *See* 42 U.S.C. § 299b–22(a), (b). An entity that discloses such records can be fined up to $10,000 per violation by the Secretary of Health and Human Services. *Id.* §§ 299b–22(f), 1320a–7a(c). Even when an entity discloses qualifying records pursuant to a court order, the Secretary may still impose a fine. *See* 73 Fed. Reg. 70732, 70791 (Nov. 21, 2008).

After Brawley requested the records, Tampa General brought this action in federal court against the Secretary of the Department of Health and Human Services under the Declaratory Judgment Act. Tampa General requested a

3

declaration that the disclosure that Brawley requested would violate the Patient

Safety Act and that the Patient Safety Act "preempt[ed]" the state law authorizing

disclosure.  Tampa General then requested an injunction providing that even

though Tampa General's disclosure violated the Patient Safety Act, and even

though the Patient Safety Act preempted contrary state law, the Secretary

nonetheless could not enforce the Patient Safety Act against Tampa General

because Tampa General would violate the Act only to comply with state law.  The

district court denied a motion to dismiss for lack of subject-matter jurisdiction

because, in its view, Tampa General faced an imminent injury in the form of the

Secretary's anticipated enforcement action.  Specifically, Tampa General was

likely to be ordered to disclose the records in state court, and if it did disclose the

records, it faced a substantial threat of prosecution by the Secretary.[1]

While the federal case was proceeding to summary judgment, the state trial

court determined, for its part, that the requested records were *not* covered by the

Patient Safety Act and ordered Tampa General to disclose them on the authority of

a state constitutional amendment mandating broad disclosure of patient records.

Tampa General refused to disclose the records on the ground that, by doing so, it

could subject itself to an enforcement action and a fine under the Patient Safety

---

[1] After this initial denial on the Secretary's motion to dismiss, the Patient Safety Organization of Florida then filed an intervenor complaint that didn't add any new relevant facts to Tampa General's complaint.

4

Act.  Eventually, the state court held Tampa General in contempt for disobeying its disclosure order.  It imposed sanctions, but Tampa General promptly appealed and the court stayed the sanctions.

At that point, a representative of the Department of Health and Human Services gave a declaration that the Department had no intention to penalize any providers who, like Tampa General, provided records pursuant to a court order. Even so, a few months later, the district court issued an order granting summary judgment for Tampa General.  The court explained that the injury of federal enforcement remained "imminent" because Tampa General faced state-court pressure to disclose and the Secretary, notwithstanding the Department's representative's statement of intent, refused to expressly disavow future enforcement.  The district court declared that the requested disclosure would violate the terms of the Patient Safety Act and that the Patient Safety Act "preempt[ed]" the state law authorizing disclosure.  The court then permanently enjoined the Secretary from enforcing the Act against Tampa General.  The Secretary appealed the district court's order.

Meanwhile, and importantly here, while Tampa General's appeal of the contempt order was pending in state appellate court, the state trial court dismissed Brawley's suit on the merits.  As a result, the state trial court dissolved its contempt order for failure to disclose, and Tampa General dismissed its appeal of

5

that order.  Brawley separately appealed the dismissal of his case on the merits,

and the parties are now briefing that merits appeal.  *See Brawley v. Smith*, No.

2D20-120 (Fla. Dist. Ct. App.).

## II

We must review jurisdictional questions sua sponte and *de novo*.  *Patel v.

Hamilton Med. Ctr., Inc.*, 967 F.3d 1190, 1193 (11th Cir. 2020).  Article III

standing, a jurisdictional requirement, must exist throughout the full course of

litigation.  *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).  To have Article III

standing based on an anticipated injury, Tampa General must establish that an

injury is "imminent."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158

(2014).  If an anticipated injury is "certainly impending," or if the threat of the

anticipated injury is "credible" or "substantial," it is imminent.  *Whitmore v.

Arkansas*, 495 U.S. 149, 158 (1990); *Babbitt v. Farm Workers*, 442 U.S. 289, 298

(1979); *Driehaus*, 573 U.S. at 164.  An anticipated injury is not imminent, by

contrast, if it depends on "a highly attenuated chain of possibilities."  *Clapper v.

Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Two cases illustrate the kind of attenuation that renders an anticipated injury

insufficiently imminent for Article III purposes.  In *Clapper*, the anticipated injury

consisted of government agents listening to the plaintiffs' phone calls pursuant to

authority vested in them under the Foreign Intelligence Surveillance Act.  *Id.* at

6

401. The Supreme Court held that the plaintiffs' injury wasn't imminent because although they intended to make phone calls with foreign correspondents who were within the scope of the challenged statute, the government agents would actually listen to those phone calls—and thereby injure the plaintiffs—only if five conditions obtained: (1) among their many possible foreign targets, the agents tried to listen to the plaintiffs' foreign correspondents' calls, (2) the agents tried to listen to those correspondents' calls under the authority of the FISA rather than by some other means, (3) FISA judges authorized the agents to listen to the calls, (4) the agents successfully implemented the technology enabling them to listen to the phone calls, and (5) these specific plaintiffs were on the other line in the calls that the agents listened to. *Id.* at 410.

In *City of Los Angeles v. Lyons*, the anticipated injury consisted of being choked by the city police. 461 U.S. 95, 97–98 (1983). The Supreme Court held that the injury wasn't sufficiently imminent, even where the plaintiff had been choked by the police once before, because there was no evidence that police officers choked law-abiding citizens regularly or that the city ordered police officers to act in that manner, making it unlikely to happen to the plaintiff in the near future. *Id.* at 105.

Here, the parties and the district court conceive of the anticipated injury as the Secretary's enforcement action against Tampa General under the Patient Safety

Act.  As things stand today, in order for that injury to occur, a cascade of conditions must obtain.  Most apparently, (1) the state appellate court must reverse the state trial court's dismissal of Brawley's lawsuit, (2) Brawley must again request the same patient records, (3) the trial court must again compel disclosure of those records, (4) Tampa General must acquiesce under the threat of contempt sanctions, and (5) the Secretary must elect to pursue an enforcement action against Tampa General despite its representative's statements to the contrary.  In addition, (6) the parties must not settle the underlying lawsuit, (7) the relevant statutes and constitutional amendments must remain untouched, and (8) the Florida Supreme Court must not revisit its interpretation of the Patient Safety Act so as to affect the litigation.  Accordingly, the threat of the Secretary's enforcement action against Tampa General does not presently pose the sort of "certain[ty]," "credib[ility]," or "substantial[ity]" required to constitute an imminent injury.  *See Whitmore*, 495 U.S. at 158; *Babbitt*, 442 U.S. at 298; *Driehaus*, 573 U.S. at 164.[2]

---

[2] When an action arises under the Declaratory Judgment Act, a jurisdictional requirement like standing can also be satisfied if a suit by the defendant against the plaintiff concerning the same issue would have satisfied that requirement.  *See, e.g.*, *Patel*, 967 F.3d at 1195 (explaining that "jurisdiction [under the DJA] turns on whether [the defendant] could file a coercive action arising under federal law") (quotation marks omitted); *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1259 (11th Cir. 2003) ("[A] federal district court has subject-matter jurisdiction over a declaratory judgment action if . . . the defendant could file a coercive action arising under federal law."); *see also, e.g.*, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).  Accordingly, Tampa General might have argued that we had jurisdiction because *the Secretary* was facing an imminent injury.  The only injury that the Secretary was facing was Tampa General's violation of the Patient Safety Act because violations of federal law injure the federal government so as to authorize suit.  *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (explaining that a violation of federal law injures the United States's

## III

Because Tampa General has failed to demonstrate that it currently faces an imminent injury, we lack jurisdiction over this case.  We **VACATE** the district court's declarations and injunction and **DISMISS** Tampa General's suit for lack of jurisdiction.

---

sovereignty).  Of course, the Secretary's injury occurs regardless of whether the Secretary elects to pursue an enforcement action, so this injury is one step more imminent than Tampa General's.  But it is likewise too attenuated to satisfy Article III.